**Lori ZAGORSKI, Appellant,**

v.

**Anthony ZAGORSKI, Appellee.**

**No. 14–99–01044–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 19, 2003.

Gerald P. DeNisco, Houston, Gordon E. Davenport, Jr., Alvin, for appellant.

Shawn Russel Casey, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## OPINION ON REHEARING

JOHN S. ANDERSON, Justice.

The opinion of May 23, 2002 is withdrawn, the following is substituted in its place and appellant's motion for rehearing is overruled.

This is an appeal from the property division in a divorce case. Lori Zagorski and Anthony Zagorski were married on December 30, 1993. No children were born or adopted during the marriage.

Lori petitioned for divorce on August 18, 1997, and Tony counterclaimed.[1] After a nine day bench trial, the trial court entered a divorce decree and filed findings of fact and conclusions of law. In three issues on appeal, Lori complains (1) there is insufficient evidence to support the trial court's finding that the money Tony received during the marriage from a foreign bank account was his separate property; (2) the trial court's erroneous characterization of the money Tony received from the foreign bank account resulted in an unfair and unjust division of property; and (3) the trial court erred in evaluating Lori's claim for reimbursement. We affirm.

## I.

### Standards of Review

▆▆▆ The trial court has broad discretion in dividing the marital estate at divorce. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). Upon appeal, we presume the trial court properly used its discretion, and will reverse the cause only where the trial court clearly abused that discretion, and only if the error materially affects the court's just and right division of the property. *Id.; Jacobs v. Jacobs,* 687 S.W.2d 731, 732–33 (Tex.1985). The test for abuse of discretion is whether the court acted without reference to any guiding rules or principles; the appropriate inquiry is whether the trial court's ruling was arbitrary or unreasonable. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). We may not substitute our judgment for the trial court's judgment unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru v. Ford Motor Co.,* 84

---

1. Tony filed a counter-petition seeking, *inter alia,* reimbursement for funds expended to benefit the community estate, and for reimbursement of his separate estate for funds expended to benefit Lori's separate estate. These claims were denied in the Final Decree of Divorce. No notice of appeal or cross-points have been presented on these issues.

S.W.3d 198, 204 (Tex.2002). Under an abuse of discretion standard, legal and factual sufficiency challenges are not independent reversible grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991).

▮ In her first issue, Lori challenges the legal and factual sufficiency of the evidence to support one of the trial court's findings of fact, and two of its conclusions of law. Findings of fact in a bench trial have the same force and dignity as a jury verdict; an appellate court reviews sufficiency challenges to findings of fact by the same standards we apply in reviewing a jury's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

▮ Property possessed by either spouse on dissolution of the marriage is presumed to be community property, and to overcome this presumption, a party must establish by clear and convincing evidence that the disputed property is separate property. Tex. Fam.Code Ann. § 3.003 (Vernon 1998). When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal and factual sufficiency review. *In re J.F.C.*, 96 S.W.3d 256 (Tex.2002); *In re C.H.*, 89 S.W.3d 17 (Tex.2002). In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d at 265–66; *In re C.H.*, 89 S.W.3d at 25–26. In a factual sufficiency review, we consider all of the evidence and must determine not whether the trier of fact could reasonably conclude that the existence of a fact is more probable than not, as in ordinary civil cases, but whether the trier of fact could reasonably conclude that the exis-

tence of the fact is highly probable. *In re the interests of JFC, ABC and MBC*, 96 S.W.3d 256 (Tex.2003); *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002).

Even applying this heightened standard of review, a factual sufficiency point requires the appellate court to examine all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex.App.-El Paso 2000, no pet.).

▮ Conclusions of law are reviewed *de novo* as legal questions. *Hitzelberger v. Samedan Oil Corp.*, 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, writ denied). We review conclusions of law to determine whether the conclusions drawn from the facts are correct. *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex.App.-Houston [14th Dist.] 1990, no writ). We will follow a trial court's conclusions of law unless they are erroneous as a matter of law. *Hitzelberger*, 948 S.W.2d at 503. Even an incorrect conclusion of law will be followed if the controlling findings of fact support a correct legal theory. *Id.* A trial court's conclusions of law may not be challenged for factual insufficiency. *Zieba v. Martin*, 928 S.W.2d 782, 786 n. 3 (Tex. App–Houston [14th Dist.] 1996, no writ). As a result, we will sustain the first point of error, an insufficient evidence issue, only if the fact finder could not have reasonably found the fact was established by clear and convincing evidence. *Id.* To this end, we must first determine whether the evidence was such that the trial judge could reasonably form a firm belief or conviction about the truth of Tony's claim that the funds in the foreign bank account were his separate property, and second, whether the trial judge could reasonably conclude that the fact that Tony had accumulated personal savings of at least $2,057,524.20 prior to

the date of the parties' marriage was highly probable.

## II.

## Does The Evidence Support Characterizing The Funds in The Darwin Ltd. Account as Tony's Property?

In her first issue, Lori argues the trial court erred in characterizing funds in the Darwin Ltd. bank account (the "Account"), and the mutations therefrom, as Tony's separate property. Lori contends the evidence was legally and factually insufficient to support both the trial court's finding Tony had in excess of $2 million in the Account prior to the date he and Lori were married, and the concomitant conclusion of law that assets purchased with those funds were also separate property.[2] The gravamen of Lori's argument is that Tony failed to establish the funds in the Account at the time of the marriage were *his* funds, and therefore all assets purchased with those funds were community property. We address first the question of whether Tony properly established the funds in the Account prior to the marriage were his.

In this first issue, Lori challenges only the following trial court finding and conclusions:

*Findings of Fact*

\* \* \* \* \* \*

7. Prior to the date of the parties' marriage, which was December 30, 1993, ANTHONY J. ZAGORSKI had accumulated savings of at least $2,057,524.20.

*Conclusions of Law*

\* \* \* \* \* \*

5. The amount of $2, 057,524.20 was the separate property of ANTHONY J. ZAGORSKI prior to the marriage to LORI ZAGORSKI on December 30, 1993.
6. Assets purchased from the $2,057,524.20, and mutations therefrom, were traced by clear and convincing evidence and are the separate property of ANTHONY J. ZAGORSKI.

Before the Zagorski's marriage, the funds in the Account totaled over two million dollars. During the marriage, Tony made withdrawals from the Account. The money was sent to him or, at his request, directly to others. A summary of the telegraphic transfers from the Account introduced at trial shows that Darwin Ltd. distributed a total of $2,057,524.20 to Tony during the time he and Lori were married.[3]

2. On appeal, Tony claims Lori waived her appellate argument because her points of error did not challenge specific findings of fact or conclusions of law. We disagree. Under the Rules of Appellate Procedure, the statement of an issue or point will be treated as covering every subsidiary question that is fairly included. Tex.R.App. P. 38.1(e). Lori's first and second issues challenge the trial court's characterization of the Account and resulting division of property; the third challenges denial of a reimbursement claim. In separate issues, Lori specifically challenged Findings 7 and 27(f) as well as Conclusions of Law 5, 6 and 11(f) in her brief. Her issues fairly in-

clude a challenge to the findings of fact and conclusions of law specified in her argument. *See Stephenson v. LeBoeuf*, 16 S.W.3d 829, 843 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722, 725 (Tex.App.-San Antonio 1999, pet. denied).

3. The record shows these funds were used during the marriage to pay community living expenses, purchase jewelry and a motorcycle for Lori, pay Tony's Australian accountant, pay Tony's separate property debt, purchase several vintage Corvettes, a deck boat and a cigarette boat, loan money to Rilco, Unitel,

Lori makes two arguments that the Account disbursements were community property. First, their receipt during the marriage represented community income. Second, the interest and *res* of the Account were so commingled they defied tracing and segregation. The essence of her complaint is credibility. Specifically, she complains Tony's inception of title evidence isn't believable due to incomplete documentation, inconsistent documents and biased testimony. As evidence the Account was separate, Tony submitted oral testimony and circumstantial documentary evidence. His evidence traced the origin of funds in the Account to the repayment of savings prior to their marriage.

 Separate property commands constitutional stature. "All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse. . . ." TEX. CONST. art. XVI, § 15. The Texas Family Code defines separate property as that property owned by a spouse before marriage, acquired during the marriage by gift, devise, or descent, and the recovery for personal injuries sustained during the marriage. TEX. FAM. CODE ANN. § 3.001 (Vernon 1998). Community property consists of the property, other than separate property, acquired by either spouse during marriage. *Id.* at § 3.002. In Texas, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. *Id.* at § 3.003. The characterization of property as either community or separate is determined by the inception of title to the property. *Smith v. Smith,* 22 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *Id.* (citing *Strong v. Garrett,* 148 Tex. 265, 224 S.W.2d 471, 474 (1949)). The major consideration in determining the characterization of property as community or separate is the intention of spouses shown by the circumstances surrounding the inception of title. *Scott v. Estate of Scott,* 973 S.W.2d 694, 695 (Tex.App.-El Paso 1998, no pet.). The spouse claiming certain property as "separate" must trace and clearly identify the property claimed to be separate. *Smith,* 22 S.W.3d at 144 (citing *McElwee v. McElwee,* 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, writ denied)). Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Id.* (citing *Hilliard v. Hilliard,* 725 S.W.2d 722, 723 (Tex.App.-Dallas 1985, no writ)). If the evidence shows separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption prevails. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973). Mere testimony that property was purchased with separate property funds, without any tracing of the funds, is generally insufficient to rebut the community presumption. *McElwee,* 911 S.W.2d at 188 (quoting *Schmeltz v. Garey,* 49 Tex. 49, 60–61 (Tex.1878)). The degree of proof necessary to establish that property is separate property is clear and convincing evidence. TEX. FAM.CODE ANN. § 3.003(b) (Vernon 1998).

Tony had the burden of establishing the funds in the Account prior to the date of his marriage to Lori were his funds. He also had the burden of tracing the funds disbursed from that account into the assets

and his son by a prior marriage, make a gift to Tony's sister, and invest in stock.

purchased with those funds in order to rebut the presumption that the assets were community property.

## A. Tony's Inception of Title Evidence

 To support his position that the Account was his separate property, Tony relies on the inception of title rule. The evidence shows that before he married Lori, Tony placed substantial amounts of his personal money with an Australian business associate, John Rundell, to collateralize and/or guarantee overseas business ventures. These funds were initially deposited into an Australian account and subsequently transferred into an account in the name of Darwin Ltd. at the Hong Kong Bank. Tony testified this money was a loan to facilitate Rilco Manufacturing Company ("Rilco"), a separate property business, and its subsidiaries to bid successfully for lucrative contracts. Tony and John Rundell testified the Account was established in 1988. The Account money originated from the repayment of the loan Tony made to Rilco Western Australia Pty. Ltd (Rilco W.A.). Specifically, the record reveals that the funds in the Account originated when Tony personally loaned money to Rilco W.A., which in turn loaned the money to its subsidiary, Rilco Process Heat Pty. Ltd., in order to fund guarantees to perform a contract in Australia. Thereafter, the funds were returned to Rilco W.A. which in turn deposited the funds into the Account through Gordon Fisher, a Hong Kong solicitor. John Rundell, the manager of the Australian projects, and signatory on the Account, testified Tony could, and did, request repayment of the funds. Tony introduced a series of letters written by Tony to Rundell requesting telegraphic transfers of money from the Account dated from July 21, 1993, to May 25, 1997. He also introduced a series of letters written by Rundell to Tony reporting annual reconciliations of the Account dated from January 29, 1993, to February 12, 1997. Lori contends Tony's evidence regarding the original source of the funds in the Account is simply not credible. While it is true the evidence does not include documents such as a trust agreement for the Account, a Rilco W.A. loan agreement or copies of original wire transfers sending the money overseas, it is not our role to question the absence of such documents. Three witnesses corroborated Tony's testimony regarding the existence of the foreign bank account prior to the marriage and the source of the funds in it. Their testimony was bolstered by documentation, the series of letters written by Tony to Rundell requesting telegraphic transfers of money from the Account dated from July 21, 1993 to May 25, 1997, and the series of letters written by Rundell to Tony reporting annual reconciliations of the Account dated from January 29, 1993, to February 12, 1997. Moreover, there was documentary evidence of the foreign transactions requiring funding guaranties. Tony's testimony was corroborated, and even in the absence of more specific documentary evidence of inception of title, it is clear and convincing evidence that the Account was separate property prior to the marriage. *Cf. Robles v. Robles,* 965 S.W.2d 605, 616 (Tex.App.-Houston [1st Dist.] 1998, writ denied) (*uncorroborated testimony of interested party does not conclusively establish a fact even when uncontradicted*).

 Moreover, we do not evaluate the credibility of oral testimony given by Tony, Robert Adams, CPA, Ken Zagorski, and John Rundell about the inception of title to the Account. This court is not permitted to interfere with the fact finder's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses' testimony. *Sprick v.*

*Sprick,* 25 S.W.3d 7, 13 (Tex.App.-El Paso 1999, pet. denied); *Puri v. Mansukhani,* 973 S.W.2d 701, 711 (Tex.App.-Houston [14th Dist.] 1998, no pet.). The credibility of witnesses in a divorce action, including the husband and wife, is solely under the purview of the trial court, not an appellate court. *Bailey v. Bailey,* 295 S.W.2d 438, 439 (Tex. App.-Amarillo 1956, no writ). We must rely upon the fact finder, here the trial court, to make findings based upon the belief or disbelief of the testimony before the court. *Carter v. Carter,* 736 S.W.2d 775, 779 (Tex.App.-Houston [14th Dist.] 1987, writ denied). If the judge found Tony and the accountant's testimony to be credible, he could have reasonably formed a firm belief or conviction about the truth of Tony's claim that the foreign bank account was his separate property. *See In re C.H.,* 89 S.W.3d at 25. Lori's legal sufficiency challenge fails.

Lori submitted evidence that the personal loans were not listed on Tony's prior divorce decree as separate property, Tony told the IRS that he had no personal interest in the Account, and he didn't pay taxes on the money. Again, as previously pointed out, however, the bulk of her argument focuses on Tony's failure to introduce 'more convincing' evidence such as a trust agreement, a loan agreement, a wire transfer, net worth statement at the time of the personal loans, corporate records of a loan received, and other documents that represented the corporate deposits, guarantees, or retentions to reinforce the direct and circumstantial evidence he did introduce that the Account was his separate property. Although Lori complains that Tony lacked more direct evidence to overcome the presumption that the foreign bank account was community property, in a bench trial the judge, as factfinder, is the sole judge of the credibility of the witnesses and weight to be given their testimony. *Dubree v. Blackwell,* 67 S.W.3d 286, 289

(Tex.App.-Amarillo 2001, no pet.); *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The judge obviously resolved the disputed evidence in favor of his findings. In light of our review of the entire record, we hold whether the trial judge could reasonably conclude that the fact that Tony had accumulated personal savings of at least $2,057,524.20 prior to the date of the parties' marriage was highly probable; therefore, the evidence is factually sufficient. Because the trial court's conclusion of law number 5 is correctly drawn from finding number 7, we hold conclusion 5 to be correct as a matter of law.

## B. Were Disbursements From The Account Community Property?

 Lori argues the Account monies received by Tony during their marriage represented community property income on investments because Tony failed to claim an interest in the Account when filing his tax returns between 1988 and 1997, and when submitting a financial statement to a bank during that time. She claims the money deposited in the Account was earned by Rilco's foreign subsidiaries, joint ventures, and other foreign activities; therefore, when Tony repatriated funds for personal use from the Account, they were cash dividends from Rilco, and, as such, gross income to Tony under the Internal Revenue Code and Treasury Regulations. Lori again challenges the credibility of Tony's evidence because there was no written agreement between Tony and John Rundell regarding the millions on deposit in the Account. Tony was not a signatory authority on the Account, nor did he personally deposit the funds into the Account. However, Lori has no alternative explanation for the business records that demonstrate retainage, and guarantees were required on Rilco's overseas ventures. Nor

did she challenge the trial court's finding number 12 that Tony was not a shareholder, officer, director, employee, or agent of Darwin Ltd. or the several findings of fact concerning Tony's total compensation paid from Rilco. Further, she neither suggests she had additional federal tax liability for the couple's receipt of Account monies during the marriage, nor makes a challenge to findings of fact nos. 9, 10 and 11.[4] Most importantly, *she did not challenge finding of fact 31,* which states: "Anthony J. Zagorski, Robert Adams, CPA, Ken Zagorski, and John Rundell testified and documents were introduced showing how the $2,057,524.20 mutated into assets or securities of Anthony J. Zagorski or Rilco."

 In an appeal from a nonjury trial, an attack on the sufficiency of the evidence must be directed at specific findings of fact, rather than at the judgment as a whole. *Carter,* 736 S.W.2d at 777. Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986); *Cohen v. Sims,* 830 S.W.2d 285, 287–88 (Tex.App.-Houston [14th Dist.] 1992, writ denied). Any unchallenged findings of fact that support the judgment will preclude reversal of the case. *Id.* at 288; *Lovejoy v. Lillie,* 569 S.W.2d 501, 504 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.) (court has no jurisdiction to go behind findings not challenged). As a result, Lori's failure to challenge these findings

requires this reviewing court to conclude that they support the parallel conclusions of law that the Account and its mutations were Tony's separate property. The trial court found that the Account represented the repayment of working capital Tony had acquired prior to his marriage to Lori. We agree.

 In an alternative argument, Lori contends the Account was hopelessly commingled with community property and defied resegregation because interest, representing community income, was paid into it. If separate property and community property have been so commingled as to defy resegregation and identification, the statutory presumption of community property prevails; when separate property has not been commingled or its identity as such can be traced, the statutory presumption is dispelled. *In re Estate of Hanau,* 730 S.W.2d 663, 667 (Tex.1987); *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965). Courts have no difficulty in following separate funds through bank accounts. *Sibley v. Sibley,* 286 S.W.2d 657, 659 (Tex.Civ. App.-Dallas 1955, writ dism'd). A showing of community and separate funds existing in the same account does not divest the separate funds of their identity and establish the entire amount as community when the separate funds may be traced and the trial court is able to determine accurately the interest of each party. *Holloway v. Holloway,* 671 S.W.2d 51, 60 (Tex.App.- Dallas 1983, writ dism'd). Moreover, when separate and community property are

---

4. These findings are as follows:

 9. Lori Zagorski did not list any income tax liability in her Trial Inventory and Appraisement arising from the transfer of the aggregate $2,057,524.20 from Darwin, Ltd.'s Hong Kong bank account.

 10. Lori Zagorski and [her] expert witness, Bill Stewart, CPA, offered no testimony that there was an income tax liability to

the parties arising from the transfer of the aggregate $2,057,524.20 from Darwin Ltd's Hong Kong Bank account.

 11. Lori Zagorski's expert witness, Bill Stewart, CPA, testified that he did not advise [Lori] that she should file amended Federal Income Tax Returns, to report income arising from the transfers of the aggregate $2,057,524.20 from Darwin Ltd's Hong Kong bank account.

commingled in a single bank account, we presume the community funds are drawn out first, before separate funds are withdrawn. *Smith*, 22 S.W.3d at 146. The only requirement for tracing and the application of the community-out-first presumption is that the party attempting to overcome the community presumption must produce clear evidence of the transactions affecting the commingled account. *See McKinley v. McKinley*, 496 S.W.2d 540, 543–44 (Tex.1973); *Kuehn v. Kuehn*, 594 S.W.2d 158 (Tex.App.-Houston [14th Dist.] 1980, no writ).

Lori claims the Account represented funds comprised of both principal and interest which the court could not segregate. According to the trial testimony, any interest on the Account was spent by Rundell to finance marketing and bidding expenses for Rilco; it was never earned by, or distributed to Tony during the marriage; therefore, no Account disbursement ever included interest income. Yet, the documents do not support this argument because no marketing and bidding expense withdrawals are listed at all during the marriage. But the record does contain ample, clear evidence to permit segregation of the separate and community funds in the Account and shows that any community funds were depleted by community expenses. Tony introduced an exhibit showing less than $115,000 in interest was earned during the marriage. Another exhibit shows approximately $366,000 was withdrawn for marital living expenses. Lori cites no evidence rebutting the community-out-first presumption. *See* TEX. R.APP. P. 38.1(h); (brief must contain appropriate citations to the record). Because the withdrawals for community expenses depleted the community funds in the Account, the Account remained Tony's separate account. Tony's tracing of the community funds into and out of the Account rebutted the statutory presumption

the Account was a community asset. *See Smith*, 22 S.W.3d at 147 (holding under application of community-out-first presumption, where withdrawals from an account deplete community funds in the account, it is error to award any portion of the remaining separate property funds to other spouse). Here, the evidence demonstrates community funds in the Account were depleted. In sum, Account funds were not so commingled as to defy resegregation and Tony dispelled the statutory presumption that the entire Account is community property. Thus, the trial court correctly found that the balance of money in the Account was separate property.

## C. Was The Property Division Unfair and Unjust?

In issue two, Lori argues items purchased with Account disbursements are community property. This argument must fail because she failed to challenge finding of fact number 31 as discussed earlier. Notwithstanding this, through the voluminous accounting records introduced at trial, Tony discharged his burden of tracing by clearly identifying disbursements from his separate property Account and mutations of his separate funds. Withdrawals, the specific interest gained from the Account, the fluctuating Account balance, and a description of all transfers, including community expenditures made, are detailed in his Summary of Telegraphic Transfers and supporting documents. The trial court correctly concluded that the disbursements from the Account were traced and properly awarded to Tony as his separate property.

We have already held finding of fact number 7 is supported by legally and factually sufficient evidence, and conclusion of law number 5 is correct. It necessarily follows that conclusion of law number 6 is also correct. The bulk of the monies dis-

tributed from the Account were separate funds, and items purchased with those separate funds were not subject to partition by the trial court. *Cameron v. Cameron,* 641 S.W.2d 210, 215 (Tex.1982) (holding separate property of a spouse not subject to divestiture by courts on divorce). Any community interest in the Account was spent on community expenses. Based on the tracing of Account funds, we hold there was legally and factually sufficient evidence for the factfinder to have determined accurately, without surmise or speculation, the interests allocated to Tony were his separate property. Awarding one spouse property purchased with funds that were also separate property does not render the award unjust and unfair. Thus, we conclude that no redivision of the parties' community estate is required. We overrule Lori's first and second issues.

## III.

### Reimbursement

In her third issue, Lori argues the community should have been reimbursed for community funds expended on a twenty-five percent interest in a joint venture which owned the Desert Mountain Ranch (the "Ranch"), one of Tony's separate investments. The trial court in its Findings of Fact and Conclusions of Law concluded:

### *Findings of Fact*

27. LORI ZAGORSKI failed to introduce evidence sufficient to prove the following claims against ANTHONY J. ZAGORSKI and RILCO:

. . .

f. Reimbursement or. . . .

### *Conclusions of Law*

11. LORI ZAGORSKI failed to meet her required burden of proof regarding the following claims against ANTHONY J. ZAGORSKI and RILCO:

. . .

f. Reimbursement. . . .

Lori contends the preceding finding and conclusion are contrary to the evidence and entry of same constituted an abuse of discretion.

 Reimbursement is an equitable doctrine, and a court of equity is bound to look at all the facts and circumstances to determine what is fair, just and equitable. *Penick v. Penick,* 783 S.W.2d 194, 197 (Tex.1988). It is not available as a matter of law, but lies in the broad discretion of the court. *Zieba v. Martin,* 928 S.W.2d 782, 787 (Tex.App.-Houston [14th Dist.] 1996, no writ). If separate property receives community expenditures during a marriage, the community estate is entitled to seek reimbursement. *McCann v. McCann,* 22 S.W.3d 21, 24 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The party requesting reimbursement must prove the enhanced value, if any, attributable to the community expenditures. *McCann,* 22 S.W.3d at 24; *Lindsay v. Clayman,* 151 Tex. 593, 254 S.W.2d 777 (1952).

 Lori argues Tony expended $160,500 of community funds on the Ranch for which the community estate should be reimbursed. Tony counters Lori didn't prove two things; first, the funds expended were, in fact, community funds, and second, the enhanced value of the Ranch was attributable to any such community expenditure. There is conflicting evidence about how much money in total was spent on the Ranch during the marriage. Lori

claims $160,500 and Tony's documents show $140,000. Tony's accountant testified only $12,737.53 of community funds were spent on the Ranch. The presumption is only community funds were used for these expenditures; however, Tony rebutted this presumption with evidence that his separate funds went into the bank and money market accounts from which checks were written for the Ranch. As a result, the community presumption ceased to exist. *See McCann,* 22 S.W.3d at 24.

■■■■ Even if community funds were spent on the Ranch, it was Lori's burden to show the enhanced value to Tony's separate estate. *See Zieba,* 928 S.W.2d at 788 (holding the enhancement value is the correct measure of reimbursement). In her brief, Lori has not referred this court to the portion of the record where the enhanced value of the Ranch attributable to a community expenditure may be found. *See* TEX.R.APP. P. 38.1(h) (brief must contain appropriate citations to the record). Because Lori failed to establish the enhancement in value to Tony's separate estate from the community expenditures on the Ranch, Lori has waived any right of reimbursement. *McCann,* 22 S.W.3d at 24. Accordingly, because the trial court had no evidence upon which to base a finding regarding Lori's reimbursement claim, entry of the challenged finding and associated conclusion of law regarding reimbursement did not constitute an abuse of discretion. Finding No. 27(f) and Conclusion of Law No. 11(f) stand, and we overrule Lori's third issue presented.

### Conclusion

We affirm the trial court's final decree of divorce.

SEYMORE, J., dissenting.

CHARLES W. SEYMORE, Justice, dissenting.

It is difficult to understand why there are few, if any, documents substantiating Tony's claim that funds in the Darwin account are his separate property. Tony failed to offer into evidence one document which directly and unequivocally traces his separate property in or out of the Darwin account—no promissory note, no financial statement, and no banking statement.

In the majority's substituted opinion, my colleagues have acknowledged our error and corrected the standard of review; however, the final result is unchanged. Because the burden of proof at trial was by clear and convincing evidence, we must apply a higher standard for legal and factual sufficiency. *In re J.F.C.,* 96 S.W.3d 256 (Tex.2002). But did we apply a higher standard?

Generally, whether property is separate or community is determined by its character at inception. *Barnett v. Barnett,* 67 S.W.3d 107, 111 (Tex.2001). Separate property consists of property owned or claimed by a spouse before marriage or acquired by a spouse by gift, devise, or descent during the marriage. TEX. FAM. CODE ANN. § 3.001 (Vernon 1998). Property possessed by the spouses upon the dissolution of the marriage is presumed to be community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon 1998). To overcome the presumption of community property, the spouse claiming certain property as separate property must trace and clearly identify the property claimed to be separate. *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975); *McElwee v. McElwee,* 911 S.W.2d 182, 188 (Tex.App.-Houston [1st Dist.] 1995, writ denied). The burden is on the spouse claiming separate property to trace the asset to prove its separate characterization. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973).

Tony contends that the money originated from repayment of a loan that he made to his business, Rilco. To which, the majority writes:

> While it is true the evidence does not include documents such as a trust agreement for the Account, a Rilco W.A. loan agreement or copies of original wire transfers sending the money overseas, it is not our role to question the absence of such documents.

I respectfully submit that it is our role to question the absence of such documents. Mere testimony that the property was purchased with separate funds, without any tracing of the funds, is generally insufficient to rebut the presumption that the property belonged to the community. *McElwee*, 911 S.W.2d at 188; *cf. Smith v. Smith*, 22 S.W.3d 140, 144 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property); *Hilliard v. Hilliard*, 725 S.W.2d 722, 723 (Tex.App.-Dallas 1985, no writ). Without these documents, Tony asks us to believe the two million dollars was his separate property based on the oral testimony of three friends (business associates) and *circumstantial* documentary evidence to corroborate their testimony. Why should we believe their testimony when it is clear from the record that the trial court did not? After Tony's lawyer called Tony and John Rundell to the witness stand, he called Nick Carbajal; whereupon the judge made the following statement:

> I don't know what he's said [Carbajal] he has said nothing yet that hasn't already been said at least twice in this case. Now if I didn't believe the first two, am I going to believe him? I mean, he's still on the payroll, isn't he?

The above comment indicates that the trial judge believed these witnesses had the same goal in mind. Thus, the majority concludes that the trial court had clear and convincing evidence notwithstanding the absence of documents and incredible witness testimony. I cannot reach the same conclusion. The evidence at trial indicating that the two million dollars was Tony's separate property was weak. Therefore, I would hold that Tony failed to overcome, by clear and convincing evidence, the presumption that funds in the Darwin account were part of the community estate. Accordingly, I respectfully dissent.