Affirmed and Plurality and Concurring Memorandum Opinions filed February
21, 2008








Affirmed
and Plurality and Concurring Memorandum Opinions filed February 21, 2008. 

In The

Fourteenth
Court of Appeals

_______________

 

NO. 14-05-00768-CV

_______________

 

GERARD ALAN WITTE, Appellant

 

V.

 

CYNTHIA GRACE WITTE, Appellee

 

                                                                                                                                                

On Appeal from the 312th District Court

Harris County, Texas

Trial Court Cause No. 03-32117

                                                                                                                                                

 

C O N C U R R I N G   M E M O R A N D
U M   O P I N I O N








Appellant Gerard Witte=s nine issues lack merit, and this
court is correct to affirm the trial court=s judgment.  The plurality concludes
that, even if the trial court erred as asserted in Gerard=s first seven issues, Gerard has not
shown that these errors had a material effect on the trial court=s property division.  However, under
the legal standard this court previously has adopted, if the trial court had
erred as asserted in Gerard=s first seven issues, the error would be reversible. 
Construing Gerard=s appellate brief liberally, this court should find that he
has not waived this argument by briefing waiver.  Nonetheless, for the reasons
explained below, Gerard=s issues lack merit.

                            I. 
Standard of Review and Applicable Law

In a divorce decree, the trial court Ashall order a division of the estate
of the parties in a manner that the court deems just and right, having due
regard for the rights of each party and any children of the marriage.@  Tex.
Fam. Code Ann. ' 7.001 (Vernon 2006).  To convince this court to disturb the
trial court=s division of property, Gerard must show the trial court clearly abused
its discretion by a division or an order that is manifestly unjust and unfair. 
See Stavinoha v. Stavinoha, 126 S.W.3d 604, 607 (Tex. App.CHouston [14th Dist.] 2004, no pet.). 
Under this standard, the legal and factual sufficiency of the evidence are not
independent grounds of error, but they are relevant factors in assessing
whether the trial court abused its discretion.  Id. at 608. 








We review the trial court=s conclusions of law de novo.  See
Stavinoha, 126 S.W.3d at 608.  As to the fact findings regarding Gerard=s first seven issues, if Cynthia had
the burden of proving that the property in question was her separate property
or of overcoming one of the community presumptions, then Cynthia had the burden
of proof by clear and convincing evidence.  Clear and convincing evidence is
that Ameasure or degree of proof which will
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.@ Tex.
Fam. Code Ann. ' 101.007 (Vernon 2002).  Gerard has challenged the legal and
factual sufficiency of the evidence to support some of the trial court=s findings in this regard.  As to
these matters, when we conduct a legal-sufficiency review, we look at all the
evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that the
finding was true. See Stavinoha, 126 S.W.3d at 608.  Looking at the
evidence in the light most favorable to the finding means that we must (1)
assume that the factfinder resolved disputed facts in favor of its finding if a
reasonable factfinder could do so, and (2) disregard all contrary evidence that
a reasonable factfinder could have disbelieved or found to have been
incredible.  See id.  However, we are not required to disregard
undisputed facts that do not support the finding, because that might skew a Aclear and convincing@ analysis.  See id.  If we
determine that no reasonable factfinder could form a firm belief or conviction
of the truth of the matter to be proved, we must conclude that the evidence is
legally insufficient.  See id.  

As to the factual-sufficiency
analysis regarding these matters, we must consider whether all of the evidence
is such that a factfinder reasonably could form a firm belief or conviction
about the truth of the allegations sought to be established.  See id. at
609.  We should consider whether disputed evidence is such that a reasonable
factfinder could not have resolved that disputed evidence in favor of the
finding. See id.  If, in light of the entire record, the disputed
evidence that a reasonable factfinder could not have credited in favor of the
finding is so significant that a factfinder could not reasonably have formed a
firm belief or conviction, then the evidence is factually insufficient.  See
id. 

As to elements of her
economic-contribution claim that did not involve rebutting a community-property
presumption, Cynthia had the burden of proof by a preponderance of evidence.  See
Tex. Fam. Code Ann. ' 3.403 (Vernon 2006); Vallone v.
Vallone, 644 S.W.2d 455, 459 (Tex. 1982); Rusk v. Rusk, 5 S.W.3d
299, 310 (Tex. App.CHouston [14th Dist.] 1999, pet. denied).  When reviewing the
legal sufficiency of the evidence as to these issues, we consider the evidence
in the light most favorable to the challenged finding and indulge every
reasonable inference that would support it. City of Keller v. Wilson,
168 S.W.3d 802, 823 (Tex. 2005).  We must credit favorable evidence if a
reasonable factfinder could and disregard contrary evidence unless a reasonable
factfinder could not.  See id. at 827. We must determine whether the
trial evidence would enable reasonable and fair-minded people to find the facts
at issue.  See id. The factfinder is the only judge of witness
credibility and the weight to give to testimony.  See id. at 819.








When reviewing a challenge to the
factual sufficiency of the evidence as to these issues, we examine the entire
record, considering both the evidence in favor of, and contrary to, the
challenged finding.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
After considering and weighing all the evidence, we set aside the fact finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).  The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  GTE Mobilnet of S.
Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own judgment for that of the trier of fact,
even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61 S.W.3d at 616. 

                                                     II.  Issues and Analysis

A.        Does the record contain legally and
factually sufficient evidence to support the trial court=s determinations that Cynthia=s interests in SEI Holdings Corporation, BKC
Properties, Inc., and F&S Production L.L.C. are her separate property?

 








In his first issue, Gerard challenges
the sufficiency of the evidence supporting the trial court=s finding that Cynthia=s SEI stock is her separate
property.  At various points during the marriage Cynthia acquired shares in SEI
Holdings Corporation, the holding company for various businesses started by
Cynthia=s father.  Gerard does not dispute
that 109,167 of the SEI shares are Cynthia=s separate property.  The trial court
found that Cynthia=s SEI shares are her separate property because: (1) Cynthia
acquired this stock by gift from her parents; (2) in the SEI Holdings
Corporation Amended and Restated Shareholders= Agreement that Gerard signed on
April 1, 1998, Gerard agreed that the 215,549 shares of SEI stock that Cynthia
acquired in April 1998 were her separate property; and (3) Cynthia later
acquired additional SEI shares in exchange for interests in two other companies
that she had received from her father by gift.  Under the applicable standard
of review for legal sufficiency, a reasonable factfinder could form a firm
belief or conviction that Cynthia=s SEI shares are her separate
property.  Under the applicable standard of review for factual sufficiency, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is not so significant that a factfinder could not reasonably
have formed a firm belief or conviction that Cynthia=s SEI shares are her separate
property.  See Zagorski v. Zagorski, 116 S.W.3d 309, 318B19 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied) (concluding evidence was legally and factually sufficient to support
trial court=s finding that property was separate property).  For this reason, Gerard=s first issue should be overruled.

In his second and third issues,
Gerard challenges the sufficiency of the evidence supporting the trial court=s finding that Cynthia=s interests in BKC Properties, Inc.
and F&S Production L.L.C. are her separate property.  Although Gerard has
assigned error as to these two appellate issues, Gerard=s opening brief does not contain any
argument, analysis, or record citations in support of Gerard=s second and third issues.  Even
construing Gerard=s appellate brief liberally, he has not adequately briefed
these issues. See Tex. R. App. P.
38.1(h);  San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 337
(Tex. App.CHouston [14th Dist.] 2005, no pet.).  For this reason, Gerard=s second and third issues should be
overruled.

B.        Does
the record contain legally and factually sufficient evidence to support the
trial court=s economic-contribution award in favor of Cynthia=s separate estate based on that
estate=s contribution of funds to pay for improvements to real
property owned by the community estate?

In his fourth issue, Gerard asserts
that the record contains no evidence upon which the trial court could have
computed the amount of Cynthia=s economic-contribution claim based on her estate=s alleged contribution of $132,311 to
improve the homestead realty owned by the community estate.  In his fifth
issue, Gerard asserts that the evidence is legally and factually insufficient
to support the trial court=s economic-contribution award of $132,311 to Cynthia based on
her economic-contribution claim.  Under these issues, Gerard presents only the
following arguments: 

(1)       Based on its determination that Cynthia=s separate estate had paid $132,311 towards the
construction of improvements on the homestead realty, the trial court awarded a
$132,311 reimbursement claim.

 








(2)       Rather than awarding this amount based on an
economic-contribution claim under section 3.403 of the Family Code, the trial
court erroneously made this award as a common-law equitable-reimbursement
claim.

 

(3)       The trial court awarded $132,311 based on
its determination that Cynthia=s separate
estate had paid this amount towards the construction of improvements, rather
than using the statutory formula required by section 3.403 of the Family Code.

 

(4)       Cynthia offered no evidence of the elements
necessary to calculate her economic-contribution claim other than the alleged
amount of funds paid by her separate estate.  

 

 See Tex. Fam. Code Ann. ' 3.403.








The trial court did not find that
Cynthia=s separate estate had paid $132,311
towards the construction of improvements on the homestead realty; rather, it
found that the amount of this contribution was $103,692.23.[1] 
Contrary to Gerard=s argument, the trial court awarded $132,311 as satisfaction
for an economic-contribution claim; it did not award Cynthia a common-law
equitable-reimbursement claim.  Nor did the trial court award Cynthia a
dollar-for-dollar credit as Gerard claims.  Instead, the trial court calculated
the amount of the economic-contribution claim based on the calculations of Cynthia=s expert, who supplied the numbers
and made the calculations based on the statutory formula for
economic-contribution claims under section 3.403 of the Family Code.[2] 
Cynthia did offer evidence of the elements necessary to calculate her
economic-contribution claim other than the alleged amount of funds paid by her
separate estate.  See Tex. Fam.
Code Ann. ' 3.403.  Because all of Gerard=s arguments under his fourth and
fifth issues lack merit, these issues should be overruled.[3]


C.        Did
the trial court err by awarding Gerard a non-existent community credit of
$59,000 as an asset because there can be no equitable claim of reimbursement of
ordinary living expenses or of the community by the community estate?

In his sixth and seventh issues,
Gerard asserts that the trial court erred in awarding him, as an asset, a
non-existent community credit based on child support and living expenses that
he paid out of a joint checking account during the pendency of the divorce
proceedings.  Gerard asserts that there can be no equitable reimbursement from
the community estate to that same estate.  Gerard also asserts that section
3.409 of the Family Code bars a reimbursement claim for these types of
expenses.  See Tex. Fam. Code Ann.
' 3.409 (Vernon 2006).








After working as a highly compensated
attorney for at least seven years, Gerard quit the practice of law to study
nanotechnology.  He later decided to stop these studies and sought a legal
position.  He turned down one opportunity and thereafter was unable to find
employment.  After ten months of not working, Gerard began practicing law as a
solo practitioner.  During this period, Gerard did not contribute to the family=s living expenses; instead, the
family had to rely on Cynthia=s savings and income from her job as a teacher.  When Cynthia
told Gerard that, after a long and competitive interviewing process, she had
obtained a higher-paying teaching job with better benefits, he indicated that
he did not approve of Cynthia working as a teacher, and he told her she needed
to Ago out and get a real job and support
this family.@  After Cynthia and Gerard separated, they continued to maintain a joint
bank account into which Cynthia deposited her earnings and which also contained
her separate property.  Gerard paid his living expenses and his child support obligations
out of this account.  Cynthia told him that she thought he should use money
from some other source.  Cynthia testified that she thought that in the year
before their separation, and after their separation, Gerard chose to earn
substantially less than what he was capable of earning.  She testified that
$59,000 was the amount which Gerard had taken from her savings to pay to her as
his child support for the children or for his living expenses; Cynthia
testified that she believed he could have paid those amounts from his salary if
he had accepted the legal position that he turned down.  

The trial court stated that it
awarded Gerard the benefits he received before divorce in the amount of
$59,000, which represents the amount of child support and Gerard=s living expenses that he paid from
the joint account rather than from income from his law practice.  It is true
that these benefits are probably not assets existing at the time of divorce;
however, in making this ruling, the trial court effectively ruled that, as part
of its just and right division of the parties= community assets, it was awarding
$59,000 more of the community property to Cynthia based on Gerard=s intentional underemployment and
failure to contribute to the community estate during this period.  The trial
court did not award Cynthia a claim for reimbursement.  Therefore, Gerard=s argument based on section 3.409 of
the Family Code lacks merit.  See Tex.
Fam. Code Ann. ' 3.409.  








The trial court found that it was
just and right to divide the community estate by awarding 53% of the community
property to Cynthia and 47% to Gerard.  By assessing this credit for $59,000,
the trial court effectively took Gerard=s conduct regarding the use of these
funds into account in dividing the community estate in this way. The trial
court=s division of the community estate
need not be equal as long as it is equitable.  See Mohindra v. Mohindra,
No. 14-06-00056-CV, 2007 WL 3072057, at *2 (Tex. App.CHouston [14th Dist.] Oct. 23, 2007,
no pet. h.).  Thus, the trial court must have some reasonable basis for an
unequal division of the property.  Id.  In exercising its discretion,
the trial court may consider many factors, including but not limited to a
spouse=s fault, the disparity of incomes or
of earning capacities, the spouses= capacities and abilities, benefits which
the party not at fault would have derived from continuation of the marriage,
business opportunities, education, relative physical conditions, relative
financial condition and obligations, disparity of ages, size of separate
estates, and the nature of the property.  Murff v. Murff, 615 S.W.2d
696, 698B99 (Tex. 1981);  Mohindra,
2007 WL 3072057, at *2.  The circumstances of each marriage dictate what
factors should be considered in the property division upon divorce.  Mohindra,
2007 WL 3072057, at *2.  Because the trial court did not abuse its discretion
in considering Gerard=s intentional underemployment and conduct regarding the
$59,000 in making a just and right division of the community estate, Gerard=s  sixth and seventh issues lack
merit and should be overruled.   

D.        Must this court reverse the trial court=s division of the community estate
and remand the entire estate for a new division because the alleged errors
shown in Gerard=s first seven issues allegedly had more than a de
minimis effect on the trial court=s division of the community estate?

In his eighth issue, Gerard asserts
that this court must reverse the trial court=s division of the community estate
and remand for a new division of the entire estate because the errors shown in
his first seven issues had more than a de minimis effect on the trial
court=s division of the community estate. See
Stavinoha, 126 S.W.3d at 615; McElwee v. McElwee, 911 S.W.2d 182,
190 (Tex. App.CHouston [1st Dist.] 1995, writ denied) (same).  Though Gerard relies on
the correct legal standard, his argument rests on the assumption that this
court would sustain at least one of his first seven issuesCan event that has not occurred. 
Because Gerard=s argument is based on this false premise, this issue also should be
overruled.








The plurality relies on an incorrect
legal standard and concludes that the pronouncements from Stavinoha and McElwee
regarding the legal standard cannot be followed because they conflict with the
Texas Supreme Court=s decision in Bell.  See ante at pp. 2B3; see also Bell v. Bell,
513 S.W.2d 20, 21 (Tex. 1974); Stavinoha, 126 S.W.3d at 615; McElwee,
911 S.W.2d at 190.  Stavinoha and McElwee do not in any way
conflict with Bell.  In Bell, the court of appeals held that the
trial court, in dividing the community property of the spouses, erred by
failing to consider two corporations that the husband owned before and
throughout the marriage.  See Bell, 513 S.W.2d at 21.  The Texas Supreme
Court concluded that (1) the wife agreed that the stock in these companies was
the husband=s separate property but she argued that the increase in the stockholders= equity during the marriage was
community property; and (2) the trial court considered these corporations, the
stock in them, and the increase in shareholders= equity and awarded all of these
interests to the husband.  See id.  The Bell court simply held
that the trial court did consider the two corporations and therefore the court
of appeals erred in reversing based on its conclusion to the contrary.  See
id.  The trial court in Bell concluded that the interests in these
two companies were either the husband=s separate property or community
property and that, if community property, then the trial court exercised its
discretion to award all of it to the husband.  See id.  The Bell
court did not address the legal standard that appellate courts should apply to
determine whether a trial court=s mischaracterization of community property as separate
property is reversible error.  See id.  

In conclusion, though the plurality=s stated rationale is not entirely
correct, the plurality nevertheless reaches the right result in overruling
Gerard=s issues and affirming the trial
court=s judgment.  Accordingly, for the
reasons stated, I respectfully join in the court=s judgment.  

 

 

/s/        Kem Thompson Frost

Justice

Judgment rendered and Plurality and Concurring Memorandum
Opinions filed February 21, 2008.               

 

Panel consists of Justices Fowler, Frost, and Edelman.* 
(Edelman, J., plurality) (Fowler, J., concurring without opinion).









[1]The trial court found that Cynthia=s separate estate had contributed $60,692.13 and
$43,000.10, which total $103,692.23.





[2]Cynthia=s expert
made this calculation in exhibit 20 to his February 3, 2005 report, which was
admitted into evidence at trial.  Based on these calculations, Cynthia=s expert concluded that the amount of the
economic-contribution claim was $132,311, exactly the amount found by the trial
court.  Though the trial court found that one of the amounts contributed by the
separate estate was $43,000.10 rather than $43,100, as reflected by the expert=s calculations, this is only an error of approximately
$100, and, in any event, Gerard has not challenged it on appeal.





[3]The trial court found that the amount of economic
contribution made by Cynthia=s separate
estate to the homestead property owned by the community estate was 
$103,692.23.  In his opening brief, Gerard presented no argument that the
evidence is insufficient to satisfy the clear-and-convincing-evidence standard
that any part of this amount was from Cynthia=s separate estate.  In his reply brief, Gerard attempts to assert
arguments that were not made in his opening brief, including asserting for the
first time that the evidence is  insufficient to support the trial court=s finding that $43,000.10 of the $103,692.23 was from
Cynthia=s separate estate.  As the plurality correctly notes,
Gerard cannot raise these issues for the first time in his reply brief.  Zamarron
v. Shinko Wire Co., 125 S.W.3d 132, 139 (Tex. App.CHouston [14th Dist.] 2003, pet. denied) (noting that
nonjurisdictional complaints raised for the first time in a reply brief are
waived).

 





*Senior Justice Richard H. Edelman sitting by
assignment.