

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00802-CV

Robert David **NALBACH**,
Appellant

v.

Stephanie Dawn **NALBACH**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-14091
Honorable Martha Tanner, Judge Presiding

Opinion by: Luz Elena D. Chapa, Justice

Sitting: Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed: April 17, 2013

AFFIRMED

Robert David Nalbach appeals the property division in the trial court's final divorce decree. He argues the trial court mischaracterized separate property as community property and the trial court abused its discretion in denying Nalbach's motion for new trial because there was insufficient evidence to support the trial court's division of the marital estate. We affirm.

### BACKGROUND

Robert David Nalbach and Stephanie Dawn Nalbach were married in 1989. They each filed a petition for divorce on August 23, 2010, and the cases were consolidated. A partial

mediated settlement resolved the issues of conservatorship, possession and access, and child support. The division of the marital estate was tried to the court, and the trial court signed the final divorce decree on August 26, 2011.

The trial court's division of the marital estate awarded Robert, among other things, the parties' residence, the personal property in his possession, a vehicle, several bank accounts, two businesses, including Investigative Resources, and specified debts and obligations. The court awarded Stephanie the personal property in her possession, one bank account, retirement accounts in her name, a vehicle, specified debts and obligations, and attorney's fees, expenses, and costs. The trial court also awarded Stephanie a judgment for $30,000 plus interest to equalize the property division. The trial court did not make separate findings of fact and conclusions of law.

Robert timely filed a motion for new trial, which the trial court denied. He appeals asserting two issues. First, Robert argues the trial court abused its discretion by mischaracterizing certain assets as community property: (1) the business, Investigative Resources, and (2) assets inherited from the Estate of Mary Louise Kammer and their mutations. Second, Robert contends the trial court abused its discretion by denying his motion for new trial because there was insufficient evidence to support the trial court's division of the marital estate.

### APPLICABLE LAW AND STANDARD OF REVIEW

When no findings of fact or conclusions of law are filed or requested following a bench trial and a reporter's record is filed, we imply the findings necessary to support the trial court's judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). The trial court did not make any findings regarding the character of the parties' assets. The court did not award any assets to either party as their separate property; instead the court distributed the assets as part of its "division of the marital estate." We therefore imply findings that the assets were

community property.  *See Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex. 1977) (holding the "estate" of the parties subject to division includes only the community property of the parties).

Under Texas law, separate property includes property owned by a spouse before a marriage and property acquired by a spouse during the marriage by gift, devise, or descent.  TEX. FAM. CODE ANN. § 3.001(1), (2) (West 2006).  Community property is all property, other than separate property, acquired by either spouse during the marriage.  *Id.* § 3.002.  "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."  *Id.* § 3.003(a); *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011).  A party claiming certain property as his separate property has the burden of rebutting the presumption of community property by clear and convincing evidence.  TEX. FAM. CODE ANN. § 3.003 (b); *Pearson*, 332 S.W.3d at 363.  Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (West 2008).

To overcome the community property presumption, a spouse claiming property is separate must trace and clearly identify the property claimed to be separate.  *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g).  "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property."  *Id.*  "If the evidence shows separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption prevails."  *Id.*  When tracing separate property, it is not enough to show that separate funds could have been the source of a subsequent deposit of funds.  *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.).  And mere testimony that property

was purchased with separate property funds, without tracing the funds, is generally insufficient to rebut the community property presumption. *Id.*; *Zagorski*, 116 S.W.3d at 316.

When a party challenges the trial court's characterization of property, we first review the sufficiency of the evidence in light of the proponent's burden of proof at trial. *See Garza v. Garza*, 217 S.W.3d 538, 549 (Tex. App.—San Antonio 2006, no pet.); *Tate v. Tate*, 55 S.W.3d 1, 5 (Tex. App.—El Paso 2000, no pet.). Because Robert had the burden in the trial court to prove the property was separate, we will find the evidence to be legally insufficient only if there is no evidence to support the trial court's implied finding it was community property *and* if the separate status of the property was conclusively established. *See Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 940 (Tex. 1991); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). In reviewing for factual sufficiency, we review all of the evidence, giving due consideration to evidence the factfinder could have reasonably found to be clear and convincing, to determine whether the trier of fact could reasonably conclude that it is "highly probable" that the property is separate. *Zagorski*, 116 S.W.3d at 314; *Sprick v. Sprick*, 25 S.W.3d 7, 13 (Tex. App.—El Paso 1999, pet. denied). Robert's factual sufficiency challenge will fail if the evidence is insufficient to produce in the mind of the trier of fact a firm belief or conviction as to the property's separate property character. *See Boyd*, 131 S.W.3d at 611; *Sprick*, 25 S.W.3d at 13–14.

If we conclude the trial court improperly included separate property in its determination of the value of the marital estate, Robert must still show the trial court abused its discretion in dividing the estate. We will not reverse the property division absent a showing the mischaracterization of the property materially affected the just and right division of the community estate and caused such an inequitable division of the estate that it constitutes an

abuse of the trial court's discretion. *Garza*, 217 S.W.3d at 549; *Boyd*, 131 S.W.3d at 617; *Magill v. Magill*, 816 S.W.2d 530, 533 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

### INVESTIGATIVE RESOURCES

Robert first contends the trial court erred by failing to find his business was his separate property. Robert testified his sole proprietorship, Investigative Resources, has existed since 1983, before the marriage. He testified the business had a checking and savings accounts that he opened "in the '80s." He testified these accounts had funds in them when the parties married, but offered no evidence of how much. He testified the accounts, together, had $3000 or less in them at the time of trial. Robert stated the business's other assets were a pickup truck, computer, cabinet, and electronic equipment. The only evidence as to when these assets were acquired was Robert's testimony that he purchased the truck shortly after he and Stephanie separated. He testified he bought the truck with cash, partly with his earnings from Investigative Resources and partly from funds in bank accounts that contained funds from multiple sources, including "probate money." Robert did not identify the accounts or offer any evidence tracing the funds used to buy the truck.

On this record, we conclude the evidence is both legally and factually sufficient to support the trial court's implied finding that Robert did not meet his burden to rebut the presumption that Investigative Resources and its assets were community property. *See Loaiza v. Loaiza*, 130 S.W.3d 894, 908 (Tex. App.—Fort Worth 2004, no pet.) (whatever is acquired during marriage by talent, toil, or other measure of productivity of either spouse is community property; spouse's personal income during marriage is community property); *Hopf v. Hopf*, 841 S.W.2d 898, 902 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (earnings during marriage from business that existed before the marriage and business accounts receivable were community

property; business equipment, furnishings or other items on hand at time of divorce were presumptively community property).

**INHERITED FUNDS**

Robert next contends he inherited assets from the Estate of Mary Louise Kammer, that he properly traced and established those assets and their "mutations" as his separate property, and that the trial court erred in not awarding them to him as his separate property.

The will of Mary Louise Kammer, which was introduced into evidence, named Robert her executor and bequeathed to him her interest in two accounts at Frost Bank "to pay for my funeral expenses and as he sees fit." Ms. Kammer died in December 2009, and Robert filed an application to probate the will on May 3, 2010. The record does not contain any evidence of how much money was in Ms. Kammer's Frost Bank accounts at the time of her death or at any other time.

Robert testified that he opened an account for the Kammer probate funds at Wells Fargo Bank on June 11, 2010. He testified the money from Ms. Kammer's Frost Bank accounts was transferred directly from Frost Bank into the new Wells Fargo account. The record contains bank statements for a Wells Fargo account in Robert's name, individually, for the months of June 2010 through October 2010. The statements reflect an initial deposit on June 11, 2010, in the amount of $112,747.88. However neither the statement nor any other evidence reflects that the deposit was a transfer from another bank and there is no documentation of the source of the deposit in the record. Other than Robert's testimony, there is no evidence the funds deposited into the Wells Fargo account during the marriage were in any way related to the funds mentioned in Ms. Kammer's will.

The bank statements show four checks were written on the account between June and October 2010 and that the closing balance of the account on October 31, 2010, was $65,124.02.

There is no documentation of to whom the checks were made or what they were for, and there is no documentation about the account at all from November 2010 until the trial in July 2011.

Robert testified he used some of the funds in the Wells Fargo account for upkeep of estate property and other probate matters. He testified there was "about $4,000" remaining in the account at the time of trial, but offered no documentation in support of the testimony. Robert testified generally that he had used "a ballpark figure of . . . 40 something thousand dollars" to pay personal expenses related to the divorce, to pay for property taxes and renovations to the community home, and to buy furniture and vehicles. There is no evidence of the amounts of most of these expenditures, and there is no documentary evidence any of these expenditures were made from the Wells Fargo account.

To overcome the community property presumption, Robert was required to trace the property claimed to be separate with evidence showing the time and means by which he originally obtained possession of the property. *Pearson*, 332 S.W.3d at 363; *Boyd*, 131 S.W.3d at 612. The trial court reasonably could have concluded that Robert did not provide clear and convincing evidence the money deposited in the Wells Fargo account in June 2010 was inherited from Ms. Kammer. He offered no evidence of how much was in Ms. Kammer's Frost accounts at the time of her death and did not trace the funds used to open the Wells Fargo to the accounts mentioned in Ms. Kammer's will. *See Osorno v. Osorno*, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (husband's testimony that funds in certain accounts had been designated his separate property in premarital agreement was insufficient to overcome community property presumption where no deposit slips or bank records were introduced to trace the money). Moreover, Robert did not offer any evidence that traced any asset purchase, improvement to the community property, or expenditure for community purposes to funds in the Wells Fargo account.

We therefore hold the evidence is sufficient to support the trial court's implied finding that Robert did not meet his burden to show by clear and convincing evidence that the funds used to open the Wells Fargo account were his inherited separate property. The evidence is also sufficient to support the trial court's failure to find that any later-acquired asset or expenditure was a mutation of Robert's inherited separate property.

## MOTION FOR NEW TRIAL

In his second issue, Robert contends the trial court abused its discretion by denying his motion for new trial because there was insufficient evidence to support the trial court's division of the marital estate. He argues that by refusing to confirm the business and the assets received from the Kammer Estate as separate property, the trial court included them in dividing the marital estate, resulting in an unjust division. Because we have held the trial court did not err in failing to find the business and the Kammer estate assets were Robert's separate property, his issue lacks merit and we overrule it. *See Peck v. Peck*, 172 S.W.3d 26, 32 (Tex. App.—Dallas 2005, pet. denied); *Young v. Young*, 168 S.W.3d 276, 285 (Tex. App.—Dallas 2005, no pet.).

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice