Affirmed; Petition for a Writ of Mandamus Denied and Memorandum Opinion
filed July 3, 2007















Affirmed; Petition for a Writ of Mandamus Denied and
Memorandum Opinion filed July 3, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00113-CV

____________

 

MOHAMMED MALEKZADEH, Appellant

 

V.

 

REBECCA MALEKZADEH, Appellee

 

 





 

On Appeal from the 309th
District Court

Harris County,
Texas

Trial Court Cause No. 2000-29196

 





 

NO. 14-06-00341-CV

____________

 

IN RE MOHAMMED MALEKZADEH

 





 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

 





 

 

 

M E M O R A N D U M   O P I N I O N

In this appeal, appellant, Mohammed Malekzadeh, challenges
the final decree of divorce granting a divorce from appellee, Rebecca
Malekzadeh.  Mohammed complains the decree awards Rebecca his separate
property and denies him visitation with his two children from the
marriage.  We affirm.

                                               
I.  Background

The Malekzadehs were married in 1987.  Two children,
A.M. and C.M., were born of the marriage.  A.M. was born in July 1990, and
C.M. was born in July 1992.  Rebecca had a daughter, Ashlea, from a prior
marriage.  

Mohammed, who immigrated from Iran, was in the business of buying
salvage cars, reconditioning them, and reselling them.  In 1989, Mohammed
was arrested for indecency with a child and fraudulent possession of
prescription forms.  In 1992, Mohammed was convicted of both offenses and
sentenced to 20 years= confinement and a $10,000 fine for
indecency with a child, and 10 years= confinement and a
$5,000 fine for fraudulent possession of prescription forms.  Both
convictions were affirmed.  Malekzadeh v. State, Nos.
01-92-00886-CR & 01-92-00887-CR, 1994 WL 681724 (Tex. App.CHouston [1st
Dist.] Dec. 8, 1994, pet. ref=d) (op. on reh=g).  

In May, 1992, Mohammed was arrested for improper contact
with Rebecca=s daughter from a previous marriage, Ashlea. 
Mohammed entered into a plea bargain with the State.  Several years later,
Ashlea recanted her statement.  In 1995, Rebecca had another child, S.H.,
outside the marriage.  

 

In June 2000, Rebecca filed her petition for divorce. 
Mohammed, who was in prison, was not present at the trial.  In October
2000, the trial court entered a final decree of divorce.  Mohammed
appealed the divorce decree to this court.  We reversed the judgment and
remanded it to the trial court because Mohammed was prevented from
participating in the trial when the trial court did not issue a bench warrant
for his attendance.  Malekzadeh v. Malekzadeh, No. 14-01-00216-CV,
2002 WL 1315819 (Tex.
App.CHouston [14th
Dist.] June 6, 2002, no pet.).  

On remand, the divorce proceeding was tried to the
bench.  The trial court found, without regard to fault, the marriage was
insupportable because of discord or conflict of personalities.  The trial
court appointed Rebecca sole managing conservator and Mohammed possessory
conservator, but determined he could not exercise visitation because he is
serving his prison sentence in Amarillo
and further limited his access to the children by mail only to be sent through
the court.  The trial court also granted permanent injunctive relief
against Mohammed, enjoining him from communicating with Rebecca and the
children except by mail through the court.  Mohammed appeals the final
divorce decree.  

                                                     
II.  Appeal

                                             
Permanent Injunction

In his first issue, Mohammed asserts the trial court abused
its discretion in issuing a permanent injunction enjoining him from contacting
his children, except by mail sent to them Acare of@ the trial court,
because Rebecca did not plead for such relief.  

 

The trial court may not grant relief in the absence of
pleadings supporting such relief.  Vaughn v. Drennon, 202 S.W.3d
308, 314 (Tex. App.CTyler 2006, no pet.); see also Tex. R. Civ. P. 301 (AThe judgment of
the court shall conform to the pleadings, . . .@).  The
purpose of pleadings is to give the opposing party notice of each parties= claims and defenses,
as well as notice of the relief sought.  Perez v. Briercroft Serv.
Corp., 809 S.W.2d 216, 218 (Tex.
1991).  This requirement, however, may be waived.  Leggett v.
Brinson, 817 S.W.2d 154, 157 (Tex. App.CEl Paso 1991, no
writ); First Nat=l Indem. Co. v. First Bank & Trust, 753 S.W.2d 405,
407 (Tex. App.CBeaumont 1988, no writ).  The party complaining
of the injunction is must present the lack of pleading to support injunctive
relief to the trial court by objection or motion for new trial in order to complain
of the trial court=s action on appeal.  Siegler v.
Williams, 658 S.W.2d 236, 240 (Tex. App.CHouston [1st
Dist.] 1983, no writ); Wm. S. Baker, Inc. v. Sims, 589 S.W.2d 492, 493
(Tex. Civ. App.CDallas 1979, writ ref=d n.r.e.). 
Because Mohammed did not raise Rebecca=s failure to plead
for injunctive relief in his motion for new trial, he has waived this complaint
on appeal.[1] 


Mohammed further argues injunctive relief is not proper because
it did not contain an express statement of the reason for prohibiting the
enjoyment of his parental rights of phone calls and writing to the
children.  Mohammed did not raise this issue in trial court and,
therefore, it is waived on appeal.  Tex.
R. App. P. 33.1.  In any event, his complaint is without
merit.  Rule 683 provides AEvery order granting an injunction and
every restraining order shall set forth the reasons for its issuance; . . .@  Tex. R. Civ. P. 683.  However, Rule
683 applies to temporary injunctions, not permanent injunctions.  Vaughn,
202 S.W.3d at 321; Qaddura v. Indo-European Foods, Inc., 141 S.W.3d 882,
892 (Tex. App.CDallas 2004, pet. denied); Shields v. State, 27
S.W.3d 267, 273 (Tex. App.CAustin 2000, no pet.).  Because the
trial court granted a permanent injunction, not a temporary injunction, Rule
683 is not applicable.  

Mohammed also contends the trial court abused its
discretion by appointing him possessory conservator, but then enjoining him
from having contact with his children when there is no finding that his having
access to his children would cause them any harm.  

 

When reviewing the legal sufficiency of the evidence, we
review the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it.  City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex.
2005).  We credit favorable evidence if a reasonable fact finder could,
and disregard contrary evidence unless a reasonable fact finder could
not.  Id.
at 827.  The evidence is legally sufficient if it would enable fair-minded
people to reach the verdict under review.  Id.  When conducting a factual
sufficiency review, we must examine the entire record, considering both the
evidence in favor of, and contrary to, the challenged finding, and set aside
the finding only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Cain v. Bain, 709
S.W.2d 175, 176 (Tex.
1986) (per curiam).  

We review the trial court=s findings of fact
for legal and factual sufficiency of the evidence by the same standards in
reviewing the evidence supporting a jury=s finding.  Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994).  We review a trial court=s conclusions of
law as legal questions.  BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  Conclusions of law may not
be challenged for factual sufficiency, but we may review the trial court=s legal
conclusions drawn from the facts to determine their correctness.  Id.  If we
determine a conclusion of law is erroneous, but the trial court rendered the
proper judgment, then reversal is not required.  Id.  Under the abuse of
discretion standard, the legal and factual sufficiency of the evidence are not
independent grounds of error, but are merely relevant factors in assessing
whether the trial court abused its discretion.  Beaumont Bank, N.A. v.
Buller, 806 sw2d 223, 226 (Tex.
1991).  

We cannot weigh credibility issues that depend on
appearance and demeanor.  Southwestern Bell Tel. Co. v. Garza, 164
S.W.3d 607, 625 (Tex.
2004).  Even when credibility issues are reflected in the record, we must
defer to the fact finder=s determinations so long as those
determinations are not unreasonable.  Id.  

 

The best interest of
the child is the primary consideration in the determining issues of possession
and access.  Tex. Fam. Code Ann.
' 153.002 (Vernon
2002).  The trial court has broad discretion in determining possession and
access to a child.  Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982).  If the
trial court appoints a managing conservator, it may appoint one or more
possessory conservators.  Tex. Fam.
Code Ann. ' 153.006(a) (Vernon 2002).  With
respect to appointing a parent as a possessory conservator, the Texas Family
Code provides:

The court shall appoint as a possessory conservator a parent who is not
appointed as a sole or joint managing conservator unless it finds that the
appointment is not in the best interest of the child and that
parental possession or access would endanger the physical or emotional welfare
of the child.

Tex. Fam. Code Ann. ' 153.191 (Vernon
2002) (emphasis added).  The Family Code further provides with regard to
the restriction of a parent=s access to a child:

The terms of an order that denies possession of child to a parent or
imposes restrictions or limitations on a parent=s right to
possession of or access to a child may not exceed those that are required to
protect the best interest of the child.

Tex. Fam. Code Ann. ' 153.193 (Vernon
2002).

The trial court=s determination
that access, even restricted access, would endanger the physical or emotional
welfare of the child precludes the court from appointing that parent possessory
conservator.  In re Walters, 39 S.W.3d 280, 286 (Tex. App.CTexarkana 2001, no
pet.).  However, the trial court may appoint a parent possessory
conservator if it determines access would not endanger the physical or
emotional well being of the child, even though access to the child would not be
in the child=s best interest.  Id.; Hopkins v. Hopkins, 853
S.W.2d 134, 137 (Tex. App.CCorpus Christi 1993, no writ).  In
such cases, the trial court may appoint a parent a possessory conservator and
deny that parent any access to or possession of the child, if such restriction
is in the best interest of the child.  Hopkins, 853 S.W.2d at 137B38; see also In
re Walters, 39 S.W.3d at 286 n.2 (stating a limitation that amounts to a
denial of access is permissible if it is in the best interest of the
child).  

We agree with Mohamed that having appointed him possessory
conservator, the trial court must have found his appointment is not a danger to
the children=s physical or emotional welfare.  However, by
restricting his access to the children, the trial court must have determined it
is not the children=s best interest for him to have
access.  

 

A.M. was one and one-half years old and Rebecca was eight
months pregnant with C.M. when Mohammed was incarcerated.  The children=s only visits with
Mohammed in prison were in October 1998 and January or February 1999.  The
trial court allowed Mohammed a 30-minute visit with the children in the court
in 2003.  Mohammed has never held his son.  Mohammed received
treatment for an opium addiction, but claims his addiction did not affect his
family.  However, Rebecca testified he was not much of father to A.M.
because of the addiction.  Rebecca stated there is no relationship on
which to build.  

Rebecca testified she took the children to see Mohammed
because she was under the impression he was being deported to Iran. 
However, she further explained the visits to the prison were difficult for the
children because they could not understand why Mohammed is in prison. 
Mohammed suggested he has friends who could bring the children to visit him at
the prison in Amarillo. 
Rebecca explained she is concerned about his friends taking the children to
visit Mohammed in Amarillo
because she is afraid they will be abducted from the country.  Rebecca=s concerns are
based on Mohammed=s threats to send A.M. to Iran when she
was little.  Mohammed planned to obtain a passport for A.M. when she was
not even two years old when there were no plans for family to travel at that
time.  We conclude the evidence supports the trial court=s implied finding
that Mohammed=s access to the children would not be in their best
interest.  See In the Interest of C.U., No. 13-03-566-CV, 2004 WL
1921227, at *4 (Tex.
App.CCorpus Christi,
Aug. 30, 2004, no pet.) (mem. op.) (finding that where trial court limited
appellant=s conservatorship on the basis that appellant had been
incarcerated for essentially child=s entire life and
a relationship had not developed between parent and child, trial court took
into account the needs and best interest of child, the circumstances of the
conservators, and other relevant factors).  

 

Mohammed also complains there is no evidence that he has
engaged in any harassment of Rebecca.  In finding of fact number 5, the
trial court found Mohammed had engaged in a pattern of unnecessary and
harassing contact with Rebecca.  Mohammed accused Rebecca of having an
affair with her boss at work.  Rebecca testified she moved to San Antonio when she was
pregnant with A.M. because of his allegation.  Mohammed followed Rebecca
to San Antonio
where he stalked her.  Rebecca further explained Mohammed has tried to get
her fired from her jobs.  Everywhere Rebecca has worked, she has been
called into her boss=s office regarding pictures taken by
private investigators Mohammed had following her.  Mohammed claims he has
never hired private investigators to follow, and take pictures of,
Rebecca.  Rebecca also testified the father of her son, S.H., will not
contact S.H. because Mohammed sent him and his family their Amarriage history,@ which was written
by Mohammed, apparently detailing Rebecca=s misconduct
during the marriage.  A review of the record shows the evidence supports
the trial court=s finding that Mohammed had engaged in
pattern of unnecessary and harassing contact with Rebecca.  

In his second issue, Mohammed asserts the injunction is
improper because it was issued after the divorce was granted and the court was
informed that appellant intended to appeal the judgment.  There is nothing
in the record to support this allegation.  Mohammed=s first and second
issues are overruled.  

                                              
Children=s Surname

 

In his third and fourth issues, Mohammed claims the trial
court did not protect the best interests of the children by restoring their
original birth name in order to comply with our opinion in the first
appeal.  In the first divorce decree in 2000, the trial court ordered the
surname for each child was changed to AHarrison.@  We reversed
the judgment of the trial court because Mohammed was denied his right to attend
the trial and remanded the case without instructions.  Malekzadeh,
2002 WL 1315819, at *2.  When an appellate court remands a case without
instruction, the case stands on the trial court=s docket as if it
had never been tried.  In re Estate of Chavana, 993 S.W.2d 311, 315
(Tex. App.CSan Antonio 1999, no pet.) (op. on reh=g). 
Therefore, the original divorce decree had no longer had any effect in light of
our disposition.  Moreover, the divorce decree entered on remand makes no
mention of changing the children=s last name and
only refers to the children=s original surname of Malekzadeh. 
Mohammed=s third and fourth
issues are overruled.  

                                               
Separate Property

In his fifth and sixth issues, Mohammed complains the trial
court awarded his separate property to Rebecca.  All property possessed by
either spouse during or on dissolution of marriage is presumed to be community
property.  Tex. Fam. Code Ann.
' 3.003(a) (Vernon
2006); McKinley v. McKinley, 496 S.W.2d 540, 543 (Tex. 1973).  The burden of overcoming
the presumption of community property is on the party asserting otherwise by
clear and convincing evidence.  Licata v. Licata, 11 S.W.2d 269,
272B73 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  As relevant here, separate property includes
property owned or claimed by the spouse before marriage.  

AClear and convincing@ evidence means the
measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.  In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002).  In conducting a legal
sufficiency review, we should look at all the evidence in the light most
favorable to the finding to determine whether a reasonable trier of fact could
have formed a firm belief or conviction that its finding was true.  Id. at 266. 
We must assume the fact finder resolved all disputed facts in favor of the
finding if a reasonable fact finder could do so.  Id.  A corollary to this
requirement is the reviewing court should disregard all evidence a reasonable
fact finder could have disbelieved or found to have been incredible.  Id. 
However, we need not disregard all evidence that does not support the
finding.  Id.  Disregarding undisputed facts that do not
support the finding could skew the clear and convincing analysis.  Id. 
If we conclude that no reasonable fact finder could form a firm belief or
conviction that the matter that must be proven is true, then the evidence is
legally insufficient.  Id.  

 

In conducting a factual sufficiency review, we must give
due consideration to evidence the fact finder could reasonably have found to be
clear and convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  Our inquiry is whether the evidence is such that a fact finder
could reasonably form a firm belief or conviction about the truth of the
allegations.  Id.  The evidence is factually insufficient if
the disputed evidence that a reasonable fact finder could not have credited in
favor of the finding is so significant that a fact finder could not reasonably
have formed a firm belief or conviction.  J.F.C., 96 S.W.3d at
266.  

Whether property is separate or community is determined by
its character at the inception of the party=s title.  Barnett
v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001).  Inception of title is
when a party first has a claim of right to the property by virtue of when title
is ultimately vested.  Zagorski v. Zagorski, 116 S.W.3d 309, 316
(Tex. App.CHouston [14th Dist.] 2003, pet. denied) (op. on reh=g); Smith v.
Smith, 22 S.W.3d 140, 145 (Tex. App.CHouston [14th
Dist.] 2000. no pet.) (op. on reh=g).  To
overcome the community presumption, the spouse claiming property as his
separate property has the burden to trace and clearly identify that property as
separate.  Zagorski, 116 S.W.3d at 316; Smith, 22 S.W.3d at
144.  Tracing involves establishing the separate origin of the property
through evidence showing the time and means by which the spouse originally
obtained possession of the property.  Zagorski, 116 S.W.3d at 316; Smith,
22 S.W.3d at 144.  

The trial court awarded each party, A[a]ll household
furniture, furnishings, fixtures, goods, appliances, and equipment in the
possession of or subject to the sole control of [Mohammed or Rebecca] as of the
date of separation.@  The date of separation is the date
of Mohammed=s incarceration in 1992.  Mohammed complains that
because he was incarcerated, he was not able to claim his belongings. 
Mohammed does not complain of the just and right division of the couple=s community
property, but complains of Rebecca=s taking of his
separate business and personal property prior to, and at the time of, his
incarceration.  Mohammed seeks reimbursement for what he claims was his
separate property taken by Rebecca.  

 

Mohammed testified that the first time he was arrested in
1989, Rebecca took his separate property worth $15,000 from his apartment. 
Mohammed has not shown that the furnishings were his separate property before
marriage or that he purchased such furnishings during the marriage with his
separate funds.  Mohammed claims after that, he purchased, with separate
assets, new furnishings worth $5,000, which Rebecca took when she kicked him
out of the apartment.  Mere testimony that property was purchased with
separate property funds, without any tracing of funds, is generally
insufficient to rebut the community presumption.  Zagorski, 116
S.W.3d at 316.  

Mohammed further complains that Rebecca took control of his
business after he was incarcerated.  However, after five days, Mohammed=s partner, under
power of attorney, took back control of his business and sent most of the cars
to auction to pay attorney fees.  This shows that Mohammed had already
disposed of his business assets in 1992, and Rebecca did not take that property
and the trial court could not have award those assets to Rebecca in the
divorce.  

Mohammed filed a ASummary of Financial
Information and Inventory,@ of which he asked the trial court to take
judicial notice.  However, his Asummary@ is nothing more
than Mohammed=s recounting of his allegations that Rebecca schemed
to obtain his separate property.  Mohammed lists amounts of attorney fees
for his criminal prosecutions and two prior divorce proceedings and damages for
the loss of his business that he was seeking from Rebecca.  It does not
describe any of the property he asserts to have been his separate property. 


 

Finally, in our previous opinion, we stated AIn addition, to
the extent Rebecca was in possession of the couple=s belongings at
the time Mohammed was incarcerated, the property division to each party of the
belongings in their possession effectively awarded all of that property to
Rebecca.@  Malekzadeh,
2002 WL 1315819, at *2 n.6.  Mohammed claims the trial court failed to
heed the guidance we provided and made the same error on remand.  Mohammed
did not raise this issue in the first appeal and we did not address it. 
At most, our statement is dicta.  

Mohammed has not shown by clear and convincing evidence
that Rebecca either took his separate property or that the trial court awarded
his separate property to Rebecca in the divorce decree.  Mohammed=s fifth and sixth
issues are overruled. 

                                                
Legal Documents

In his seventh issue, Mohammed contends the trial court
abused its discretion by not enforcing its divorce decree or ordering Rebecca
to appear at a hearing via telephone conference.  In the divorce decree,
the trial court ordered Rebecca to turn over all Alegal documents
pertaining to [Mohammed]=s criminal cases@ to his attorney
within 15 days of the date of the final divorce decree.  When Rebecca
failed to turn over all the documents during the stated period, Mohammed filed
a motion to enforce complaining she had only turned over 51 pages, not the two
boxes of documents Mohammed claims exist.  Mohammed states the trial court
set a hearing on the motion to enforce for January 27, 2005, and on February 8,
2005, the process server informed his attorney and the court that Rebecca=s residence was
vacant.  In support of these claims, he cites to the trial court=s ABench Warrant
Release/Return@ and his own objection to the trial court=s denial to extend
his bench warrantCneither of which supports his
assertions.  

 

When a party files a motion for enforcement requesting
contempt, Athe trial court shall set the date, time, and place of
the hearing and order the respondent to personally appear and respond to the
motion.@  Tex. Fam. Code Ann. ' 157.061 (Vernon
2002).  Mohammed claims the trial court set the hearing on January 27,
2005.  Our record is deficient in that it does not contain the order of
the trial court setting the hearing.  However, assuming the trial court
set the hearing and Mohammed attempted to serve Rebecca with notice of the
hearing, Mohammed admits service on Rebecca was unsuccessful because the
process server found her residence vacant.  Any error is harmless in view
of Mohammed=s admission that he was not able to serve her.  

Mohammed also states the trial court erred in failing to
find that Rebecca had committed cruelty when she intentionally withheld his
legal documents over five years to deny him his right of access to the
courts.  However, because Mohammed has not provided any supporting
argument for this assertion, it is waived.  Tex. R. App. P. 38.1(h).  Mohammed=s seventh issue is
overruled.  

                                                 
Appellate Costs

In his eighth issue, Mohammed contends the trial erred by
not adjudicating the dispute over appeals costs from the first appeal and
issuing a writ of execution ordering Rebecca to pay appeal costs in compliance
with our mandate.  In the first appeal, we ordered Rebecca Ato pay all costs
incurred in this appeal.@  Mohammed filed a motion for
reimbursement of appeal costs.  In his motion, he requested that the trial
court award him all costs incurred in the first appeal.  During the
hearing on temporary orders, Mohammed raised the issue of the costs of the
first appeal, arguing, even though the bill of costs from this court stated the
costs of the appeal incurred were $475.00, the costs were actually
$503.00.  The trial court responded that there was nothing for it to
determine with regard to the amount of appellate court costs.  

 

Mohammed asserts the trial erred in not adjudicating the
dispute in the amount of the costs of the first appeal.  When the
appellate court issues its mandate, the clerk of the court determines the costs
of the appeal and attaches a bill of costs to the mandate.  County of
El Paso v. Dorado, 180 S.W.3d 854, 873 (Tex. App.CEl Paso 2005, pet.
denied), cert. denied, __ U.S. __, 127 S. Ct. 1124 (2007) (citing Tex. R. App. P. 18.5, 43.4).  The
trial court has the duty to enforce the appellate court=s mandate, in
which the appellate court=s costs are included, but it is not
required to re-order that the appellee pay the costs of the appeal because
those costs have already been assessed by the appellate court.  Walston
v. Walston, 971 S.W.2d 687, 697 (Tex. App.CWaco 1998, pet.
denied) (citing Tex. R. App. P.
51.1(b)).  A party seeking corrections in specific items of costs should
do so in a motion to re-tax costs.  Dorado, 180 S.W.3d at
873.  A motion to re-tax costs should be filed in the court where the item
of costs accrued.  Reaugh v. McCollum Exploration Co., 140 Tex.
322, 167 S.W.2d 727, 728 (1943).  Therefore, the trial court did not err
in not addressing Mohammed=s dispute over the costs of the first
appeal.  

Mohammed further contends the trial court erred in not
issuing a writ of execution to Rebecca to pay the costs of the first
appeal.  AFollowing remand to the trial court, the prevailing
party on appeal may immediately seek to recover the costs of appeal by applying
for a writ of execution.@  Walston, 971 S.W.2d at
697.  When the prevailing party requests an execution for the costs of
appeal, the trial court has the duty to issue a writ of execution in compliance
with the appellate court=s mandate.  Id.  

There is nothing in the record to show that Mohammed sought
a writ of execution of our prior judgment to collect the appellate costs from
Rebecca.  Therefore, Mohammed has waived this complaint on appellate
review.  See id. at 698 (holding appellant, who did not seek
execution of prior appellate judgment for appeal costs from appellee, did not
preserve for appellate review complaint that trial court erred in not ordering
appellee to pay costs of prior appeal).  Nor was it error for the trial
court not to issue a writ of execution when Mohammed never sought one.  See
id. (A[W]e cannot say that the trial court erred in not
executing the judgment for costs as [appellant] has not requested them.@).  Mohammed=s eighth issue is
overruled.

                                                  
Judicial Notice

 

In his ninth issue, Mohammed argues the trial court erred
when it failed to take judicial notice of Rebecca=s Afraudulent
bankruptcy case@ and his cross-action and supporting
affidavit.  A[A] trial court may take judicial notice
of its own records in matters that are generally known, easily proved, and not
reasonably disputed.@  Trimble v. Texas Dep=t of Protective
& Regulatory Serv., 981 S.W.2d 211, 215 (Tex. App.CHouston [14th
Dist.] 1998, no pet); Tschirhart v. Tschirhart, 876 S.W.2d 507, 508
(Tex. App.CAustin 1994, no writ).  A court may take judicial
notice that a pleading has been filed in the case, but may not take judicial
notice of the truth of allegations in its records.  Tschirhart, 876
S.W.2d at 508.  

In his cross petition for divorce, Mohammed alleged that
Rebecca committed adultery and acts of cruelty during their marriage. 
While the trial court could take judicial notice of the fact of the filing of
Mohammed=s cross-petition,
it could not take judicial notice of the veracity of his allegations contained
in his cross petition.  See id.  Therefore, the trial court
properly refused to take judicial notice of Mohammed=s cross-petition
for divorce and supporting affidavits.  

Mohammed further claims the trial court erred in not taking
judicial notice of Rebecca=s bankruptcy petition which Mohammed
asserts contains false statements.  If a party provides proof of another
court=s records, the
trial court may take judicial notice of the other court=s records.  Krishnan
v. Ramirez, 42 S.W.3d 205, 222B23 (Tex. App.CCorpus Christi
2001, pet. denied).  As with taking judicial notice of the truth of
allegations contained in the pleadings of its own record,  the trial court
may not take judicial notice of the truth of allegations in the records of
another court.  It was not error for the trial court to refuse to take
judicial notice of contents of the bankruptcy petition.  Mohammed=s ninth issue is
overruled. 

                                              
Ground for Divorce

 

In his tenth issue, Mohammed asserts the trial court erred
by not granting the divorce on grounds of Rebecca=s cruelty when the
evidence was legally and factually sufficient to support such a finding. 
When a party attacks the legal sufficiency of an adverse finding on which he
had the burden of proof at trial, he must demonstrate on appeal that the
evidence establishes, as a matter of law, all vital facts in support of the
issue.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001)
(per curiam).  In making this determination, we review the evidence in the
light most favorable to the challenged finding and indulge every reasonable
inference that would support it.  Wilson, 168 S.W.3d at 822. 
We credit favorable evidence if a reasonable fact finder could, and disregard
contrary evidence unless a reasonable fact finder could not.  Id.
at 827.  The evidence is legally sufficient if it would enable fair-minded
people to reach the verdict under review.  Id. 

Because appellant challenges the factual sufficiency of an
adverse finding on which he had the burden of proof, he must demonstrate on
appeal that the adverse finding is against the great weight and preponderance
of the evidence.  Francis, 46 S.W.3d at 242.  In reviewing the
complaint that the fact finder=s finding is against the great weight and
preponderance of the evidence, we must consider and weigh all the evidence,
setting aside the verdict only if the evidence is so weak or if the finding is
so against the great weight and preponderance of the evidence that it is
clearly wrong and unjust.  Id.  

Although seldom used by the courts when granting a divorce
because of the availability of no-fault divorce, the Texas Family Code provides
for divorce on the ground of cruelty.  Henry v. Henry, 48 S.W.3d
468, 473 (Tex. App.CHouston [14th Dist.] 2001, no pet.). 
AThe court may
grant a divorce in favor of one spouse if the other spouse is guilty of cruel
treatment toward the complaining spouse of a nature that renders further living
together insupportable.@  Tex.
Fam. Code Ann. ' 6.002 (Vernon 2006).  Insupportable
means A>incapable of being
borne, unendurable, insufferable, intolerable.=@  Henry,
48 S.W.3d at 473 (quoting Cantwell v. Cantwell, 217 S.W.2d 450, 453
(Tex. Civ. App.CEl Paso 1948, writ dism=d)).  

 

Mohammed asserts Rebecca committed cruelty when she
objected to probation in the indecency with a child criminal case involving the
16 year old girl.  Just prior to that case going trial, Mohammed was
arrested because Rebecca=s daughter from a previous marriage,
Ashlea, claimed Mohammed had touched her inappropriately.  Mohammed
contends Rebecca=s treatment of him was cruel when she
testified at a bond hearing in his criminal case for indecency with a child
involving the 16 year old girl that he was a flight risk.  Rebecca stated
she testified he was a flight risk because he is from Iran.  Mohammed
further claims Rebecca committed cruelty by committing adultery during the
marriage, resulting in her having a child by another man in 1995Cwhile
Mohammed  was in prison.  Mohammed also alleges Rebecca had an affair
with her boss.  However, Rebecca denied this allegation.

 
        Mohammed also asserts Rebecca
committed cruelty when she no longer allowed the children to have contact with
him.  A.M. was one and one-half years= old and Rebecca
was eight months pregnant with C.M. when Mohammed was incarcerated. 
Rebecca explained there is no relationship on which to build.  Rebecca
testified the children have difficulty understanding why Mohammed is in prison.


With regard to Mohammed=s conduct during
the marriage, in 1992, Mohammed was convicted of indecency with a 16 year old. 
Mohammed does not take responsibility for his own criminal troubles, but blames
Rebecca, asserting the marriage was unstable with numerous separations and
alleging that if Rebecca had been Aa normal wife,@ they would have
been Aliving as normal
family@ and Athe door for the
16 year old girl coming to his apartment would have been closed because he had
never committed such an offense in his life.@  

Mohammed videotaped sexual acts involving Rebecca and
him.  According to Rebecca=s testimony, after Mohammed was arrested
in the case involving the 16 year old girl, the police found a videotape. 
The police asked Rebecca to identify the female, who was unconscious, in the
videotape because they were concerned about the safety of that person. 
Rebecca, who had never seen the videotape, saw herself on it when the police
played it for her.  Rebecca was not conscious and did not consent to the
acts on the videotape.  She was devastated by what Mohammed had done to
her and filed a sexual assault charge against him.  Rebecca dismissed the
charges because Mohammed paid for Ashlea=s biological
father to come to Houston to testify against her and suggested Ashlea=s father would
obtain custody of her.  

 

Rebecca also testified she moved to San Antonio when she
was pregnant with A.M. because Mohammed had accused her of having an affair
with her boss.  Rebecca claims Mohammed followed her to San Antonio where
he stalked her.  Rebecca also claims Mohammed tried to get her fired by
hiring private investigators to follow, and take pictures of, her. 
Mohammed denies that he has hired private investigators to follow
Rebecca.  Rebecca further testified the father of her son, S.H., will not
contact S.H. because Mohammed sent him and his family a copy of their Amarriage history.@  

We do not find evidence of such conduct establishes, as a
matter of law, that Rebecca committed cruelty.  Nor do we find the
evidence of insupportability is so weak or is so against the great weight and
preponderance of the evidence that it is clearly wrong and unjust. 
Mohammed=s tenth issue is
overruled.  

                    
Rebecca=s Sexual Assault Charge against
Mohammed

In his eleventh issue, Mohammed claims the trial court
erred by not allowing him to cross-examine Rebecca about certain matters related
to Rebecca=s reason for not pursuing her own sexual assault
charge against him.  As addressed above, Rebecca stated she dismissed the
charge because Mohammed paid for Ashlea=s biological
father to come to Houston to testify against her and suggested Ashlea=s father would
obtain custody of her.  Rebecca signed an AAffidavit of
Non-Prosecution,@ stating the affidavit was Aentirely
voluntary,@ and she no longer desired for Mohammed to be
prosecuted for sexual assault.

Mohammed=s complaint is without merit.  When
Rebecca repeated her previous testimony that Mohammed had threatened that
Ashlea=s father would try
to gain custody of her, the trial court observed Awe=ve already heard
all this. . . . I=m not going to allow you to go over
something again, and again, and again.@  Mohammed
had an opportunity to cross-examine Rebecca about her desire that Mohammed not
be prosecuted for sexual assault of her, which he fully exercised.  It was
not an abuse of discretion for the trial court to not permit any further questioning
about the matter.

 

Mohammed further asserts the trial court erred in admitting
her testimony that she dropped the video charge on the basis he had threatened
her because he claims such testimony was false.  However, witness
credibility is within the province of the fact finder; it is not a basis on
which to exclude testimony.  

Mohammed also claims the trial court erred in not allowing
him to question Rebecca about who authored a letter to Marvin Zindler, which,
according to Mohammed, states the prosecutors, not he, encouraged Ashlea=s father to try to
gain custody of her.  Rebecca testified her mother wrote the letter. 
The trial court then sustained Rebecca=s objection that
she could not testify as to what her mother wrote.  The court then
suggested that Mohammed subpoena Rebecca=s mother to
testify about the letter.  On appeal, Mohammed contends Rebecca authored
the letter.  To preserve error in the exclusion of evidence, a party must
(1) attempt during the evidentiary portion of the trial to introduce the
evidence; (2) if an objection is lodged, specify the purpose for which the
evidence is offered and give the reasons the evidence is admissible; (3) obtain
a ruling from the court; and (4) if the court rules the evidence inadmissible,
make a record, through a bill of exceptions, of the precise evidence the party
desires admitted.  Carlile v. RLS Legal Solutions, Inc., 138 S.W.3d
403, 411 (Tex. App.CHouston [14th Dist.] 2004, no pet.). 
Because Mohammed did not articulate a legal ground for the admission of the
letter or make a bill of exceptions, he has waived this complaint on
appeal.  

Finally, Mohammed contends the trial court erred in
excluding two letters from Rebecca.  Again, Mohammed has not preserved
error.  He failed to articulate a reason to the trial court supporting the
admissibility of the letters and make a bill of exceptions.  See id. 
Mohammed=s eleventh issue
is overruled.  

                                  
Letter from Mohammed=s Daughter

 

In his twelfth issue, Mohammed argues the trial court erred
in excluding from evidence a letter from his daughter to him.  When
Mohammed=s attorney
attempted to introduce A.M.=s last letter to Mohammed into evidence
through Mohammed=s testimony, Rebecca stated she had no
objection, but the guardian ad litem objected on hearsay.  The trial court
sustained the guardian ad litem=s objection.  The following day,
Mohammed=s attorney
requested that the trial court take judicial notice of the record from the
hearing on temporary orders during which letters from the children were
admitted.  The guardian ad litem, who was not at the temporary orders
hearing, stated he had not seen the letters before.  The trial court
stated it would come back to the issue of judicial notice, but apparently it
did not. 

Mohammed argues the trial court was required to take
judicial notice of the letters contained in the record of the hearing on the
temporary orders.  Contrary to Mohammed=s assertion, the
trial court may not take judicial notice of testimony of a prior hearing on
temporary orders in the same case.  May v. May, 829 S.W.2d 373, 376
(Tex. App.CCorpus Christi 1992, writ denied) (op. on reh=g); Continental
Oil Co. v. P.P.G., 504 S.W.2d 616, 622 (Tex. Civ. App.CHouston [1st
Dist.] 1973, writ ref=d n.r.e.), disapproved on other grounds
by In re Smith Barney, Inc., 975 S.W.2d 593 (Tex. 1998); see also In the
Interest of M.W., 959 S.W.2d 661, 664 (Tex. App.CTyler 1997, writ
denied) (Awe agree that the trial court improperly took judicial
notice of prior proceedings@).  It was not error for the trial
not to take judicial notice of the evidence admitted in the temporary orders
hearing.  Mohammed also requests that we take judicial notice of the
letters.  Like the trial court, we may not take judicial notice of that
hearing.  See Continental Oil Co., 504 S.W.2d at 622 (ANeither the trial
court nor this court may judicially notice the testimony taken at the hearing
on the temporary injunction.@). 

 

Mohammed asserts the trial court erred in excluding A.M.=s letter from
evidence.  After the guardian ad litem objected on hearsay, Mohammed=s attorney did not
assert that it was not hearsay or that there was an exception to the hearsay
rule.  Instead, he argued the letter was the best evidence because it was
the original and Mohammed had testified the letter was written in A.M.=s
handwriting.  The trial court responded that it did not doubt the
authenticity of the letter, but that the question was whether it was
hearsay.  Mohammed=s attorney then requested that the letter
be admitted for the limited purpose of showing communication between Mohammed
and his daughter.  The trial court stated the letter was hearsay and
refused to admit the letter into evidence.  Because Mohammed failed to
state a reason the letter was admissible and failed to make of bill of
exceptions, he has waived this issue on appeal.  See Carlile, 138
S.W.3d at 411.  

Even if the trial court erred in excluding the letter,
after reviewing the entire record, we conclude Mohammed cannot show that the
divorce decree turns on exclusion of his daughter=s letter.  City
of Brownsville v. Alvarado, 897 S.W.2d 750, 753B54 (Tex.
1995).  Moreover, the trial court allowed Mohammed to testify that his
daughter wrote to him and he also testified he had a close relationship with
his daughter.  

Finally, Mohammed asserts he has attached the letter from
A.M. to his appellate brief so that we may examine it to determine if it was
admissible.  However, because the letter is not part of the appellate
record, we may not consider it.  Nguyen v. Intertex, Inc., 93
S.W.3d 288, 293 (Tex. App.CHouston [14th Dist.] 2002, no pet.). 
Mohammed=s twelfth issue is
overruled.  

                                
Evidence of Prior Criminal Conviction

In his thirteenth issue, Mohammed contends the trial court
erred in admitting his 20 year old Adismissed
misdemeanor deferred adjudication judgment.@  When the
guardian ad litem asked Mohammed when his first criminal conviction was,
Mohammed=s counsel stated
there was a motion in limine.  After hearing argument on the motion, the
trial court denied the motion and overruled Mohammed=s relevancy
objection.  When the guardian ad litem continued to question Mohammed
about a 1984 conviction for misdemeanor theft, Mohammed=s counsel argued
there was no conviction for theft because it was deferred adjudication.  

 

On appeal, Mohammed contends his 1984 conviction was too
remote in time for it to be admissible.[2] 
Appellant=s counsel did not object on the basis of
remoteness.  Therefore, this complaint is waived on appeal.  Tex. R. App. P. 33.1.  

Even if Mohammed had not waived error, we conclude it was
not error for the trial court to admit the conviction into evidence. 
Convictions for felonies or involving moral turpitude are admissible in civil
cases for impeachment purposes.  Tex.
R. Evid. 609(a); Harris County v. Jenkins, 678 S.W.2d 639, 641
(Tex. App.CHouston [14th Dist.] 1984, writ ref=d n.r.e.). 
Evidence of a conviction is not admissible if probation has been satisfactorily
completed for the crime from which the person was convicted and that
person Ahas not been
convicted of a subsequent crime which was classified as a felony or involved moral
turpitude, regardless of punishment; . . .@  Tex. R. Evid. 609(c) (emphasis
added).  In 1992, Mohammed was convicted of three felonies. 
Therefore, it was not error for the trial court to admit the 1984 theft
conviction.  

Moreover, error, if any, was harmless because the trial
court was already aware of Mohammed=s other felony
convictionsCtwo convictions for indecency with a child, and one
for possession of blank controlled substance prescription formsCfor which he was
serving time in prison.  Mohammed=s thirteenth issue
is overruled.  

                                               
Guardian ad Litem

 

In his fourteenth issue, Mohammed claims the guardian ad
litem exceeded his statutory duties in his role at trial because he acted as
Rebecca=s attorney. 
In his fifteenth issue, Mohammed complains the evidence is legally and
factually insufficient to support the inclusion of the following language in
the divorce decree: AThe court finds that the Guardian Ad Litem
has performed all requirements of his appointment per the Texas Rules of Civil
Procedure and the Texas Family Code.@  

Former section
107.002 of the Texas Family Code, which applies to the case before us, provided
with the respect to the duties a of a guardian ad litem:

(c) A guardian ad litem appointed under this subchapter is not a party
to the suit but is entitled to:

(4) attend all legal proceedings in the case but may not call or
question a witness unless the ad litem is a licensed attorney; . . . 

Act of
June 20, 1997, 75th Leg., R.S., ch. 1294, ' 2, 1997 Tex. Gen.
Laws 4931, amended by Act of June 18, 2003, 78th Leg., R.S., ch. 262, ' 1, 2003 Tex. Gen.
Laws 1175 (emphasis added).[3] 


 

Under former section 107.002, the guardian ad litem, who is
a licensed attorney, was allowed to participate in the trial.  The
guardian ad litem questioned both Mohammed and Rebecca and made objections to
the admission of evidence.  These were appropriate actions in his role as
guardian ad litem for the children.  See Maltos v. Texas Dep=t of Protective
& Regulatory Servs., 937 S.W.2d 560, 563 (Tex. App.CSan Antonio 1996,
no writ) (finding guardian ad litem, who was also an attorney, acted in role as
representative of the children by presenting a brief opening statement in which
he urged the jury to consider the best interests of the children, conducting
brief cross-examinations of several witnesses, and otherwise playing a very
limited role in the trial).  We do not see anything in the record
demonstrating that the guardian was representing Rebecca=s interests, and
find the evidence is legally and factually sufficient to support the trial
court=s determination
that the guardian ad litem performed his duties in accordance with the Texas
Rules of Civil Procedure and the Texas Family Code.  

Among these multifarious issues, Mohammed also raises a
number of complaints regarding the trial court=s evidentiary
rulings.  Mohammed complains that when he tried to solicit testimony from
Dr. Guilak, a pediatrician who had seen Ashlea as a patient, about letters she
had written to the Texas Board of Pardons and Paroles concerning Ashlea=s recanting of her
allegation of improper contact, the trial court sustained the guardian ad litem=s objection. 
To the contrary, the guardian ad litem objected to the admission of Dr. Guilak=s letters, but the
trial court overruled the objection, but stated it had read the letters and
there was no need to ask Dr. Guilak about them.  

However, the trial court permitted Dr. Guilak to testify
about other actions she took when she discovered Ashlea had recanted.  Dr.
Guilak tried to find a way Ato have the judges hear what has happened.@  Dr. Guilak
took Rebecca to the Iranian radio station to appeal, in Persian and English, to
the community to raise money to help release Mohammed.  When Mohammed
attempted to ask Dr. Guilak more questions about what she and Rebecca had told
the community, the guardian ad litem objected.  The trial court overruled
the objection.  According to Dr. Guilak, Rebecca stated that Ashlea said
she had lied about the molestation because she wanted to get Mohammed away from
her mother and Ashlea had apologized for the lie.  In light of Dr. Guilak=s extensive
testimony, error, if any, is harmless. 

 

Mohammed also contends the trial court erred in not
admitting a letter he claims was written by Rebecca to the Board of Pardons and
Paroles and another letter regarding an attorney hired to work on the issue
regarding Ashlea=s recanting.  Rebecca testified her
signatures were on the letters, but she could not say she had written all
portions of those letters.  The trial court stated not every document on
this issue needed to be introduced into evidence.  However, the trial court
understood Mohammed was trying show that he could not have been guilty of the
charge regarding Ashlea if Rebecca agreed to help him in his appeal and,
therefore, permitted his attorney to continue to question her in that
regard.  Indeed, Rebecca testified she had assisted in trying to obtain
Mohammed=s release. 
Again, error, if any, is harmless.  

Mohammed also complains the trial court erred in not
admitting a letter by Ashlea he claims Rebecca faxed to the Board of Pardons
and Paroles when she testified she had never seen the letter before this
trial.  After Rebecca testified she had never seen Ashlea=s letter, it does
not appear that Mohammed=s attorney ever offered the letter into
evidence.  Therefore, this complaint is waived on appeal.  Carlile,
138 S.W.3d at 411.  

Mohammed complains that the trial court erred in allowing
Rebecca=s testimony about
the video tape incident.  The only objection Mohammed=s attorney lodged
in the trial court was to Rebecca=s testifying in the
narrative.  Complaints on appeal must conform to objections made at trial
or they are waived.  Knoll v. Neblett, 966 S.W.2d 622, 639 (Tex.
App.CHouston [14th
Dist.] 1998, pet. denied).  Mohammed waived this complaint on appeal.

Mohammed complains of the guardian=s ad litem=s objections to
his testimony about the video tape and Rebecca=s sexual assault
charge and the trial court=s sustaining those objections.  When
Mohammed was being cross-examined about the sexual assault and the videotape,
the guardian objected to his answers to questions that called for a yes or no
answer as nonresponsive.  Also, when Mohammed was questioned regarding how
Rebecca found out about the videotape, he answered how it came to be
made.  The guardian ad litem objected to his answer as nonresponsive; the
trial court sustained the objection and reminded Mohammed that the question was
how Rebecca found out about the tape, not how it was made.  There was
nothing improper about the guardian ad litem=s objections or
the trial court=s sustaining those objections. 
Mohammed=s fourteenth and
fifteenth issues are overruled.  

 

                                       
Denial of Access to Children

In his sixteenth and seventeenth issues, Mohammed argues
the trial court erred in denying him restricted visitation solely because of
his convictions and incarceration without considering the best interests of the
children.  In finding of fact number 3, the trial court found AMohammed
Malekzadeh was convicted of a crime of sexual misconduct, is serving a sentence
in a Texas prison, cannot exercise periods of possession with the children and
has no ability to pay periodic child support.@  Mohammed
complains of finding of fact number 3 because he only sought restricted
visitation with the children every three months at the TDCJ facility. 
Mohammed also argues conclusion of law number 2, which states Athe best interest
of the children is the primary consideration of the court in determining the
issues of conservatorship and possession of and access to the children,@ is not drawn
correctly from the facts and is not supported by the evidence.  

Mohammed complains that while the trial court appointed him
possessory conservator, it erroneously denied him access to the children except
to send them letters through the court.  As we discussed with regard to
Mohammed=s first issue, the
trial court may appoint a parent possessory conservator if it determines access
would not endanger the physical or emotional well being of the child, even though
access to the child would not be in the child=s best
interest.  In re Walters, 39 S.W.3d at 286; Hopkins, 853
S.W.2d at 137.  In such cases, the trial court may appoint a parent a
possessory conservator and deny that parent any access to or possession of the
child, if it such restriction is in the best interest of the child.  Hopkins,
853 S.W.2d at 137B38; see also In re Walters, 39
S.W.3d at 286 n.2 (stating a limitation that amounts to a denial of access is
permissible if it is in the best interest of the child).  We have already
determined the evidence supports the trial court=s decision that it
is in the children=s best interest to restrict Mohammed=s access to the
children.

 

ANonetheless, we note that by restricting
appellant=s visitation with and possession of the child, the
trial court has not denied appellant his rights as parent.  Should
circumstances change, a parent whose rights have been restricted may file a
motion to modify the trial court=s order.  The
Texas Family Code provides for modification of an order as to conservatorship,
support, or possession of and access to a child if the modification would be in
the best interest of the child and the circumstances of the child or the
conservator, among others, has materially and substantially changed.@  In the
Interest of C.U., 2004 WL 1921227, at *4 (citations omitted).  Indeed,
the trial court provided with regard to visitation after Mohammed is released
from prison, Avisitation shall be conducted through the S.A.F.E.
Program for the first three months, or until the Court can conduct a
modification hearing to determine the terms and conditions for extended
visitation.@  Mohammed=s sixteenth and
seventeenth issues are overruled.  

Accordingly, the judgment of the trial court is
affirmed.  

                                                 
III.  Mandamus

Mohammed also brings a petition for a writ of
mandamus.  Mandamus is an extraordinary remedy that is not issued as a
matter of right, but only at the discretion of the court.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 138 (Tex. 2004) (orig.
proceeding).  Mandamus relief is available when the record shows (1) the
trial court clearly abused its discretion, and (2) the relator has no adequate
remedy by appeal.  In re Ford Motor Co., 165 S.W.3d 315, 317 (Tex.
2005) (orig. proceeding) (per curiam).  

In his first issue, Mohammed asserts the trial court
violated its duty to provide him with acknowledgment that the children received
their presents and cards care of the trial court.  There is no order,
written or oral, that the trial court would notify Mohammed that the children
had received his letters and gifts.  See Tex. R. App. P. 52.3(9)(j) (stating appendix to petition must
include certified or sworn copy of any order complained of).  We find no
abuse of discretion by the trial court.  

 

In his second through fifth issues, Mohammed asserts the
trial court violated its duty to restore the children=s original
surname; the trial court violated its duty to issue an execution order to
Rebecca to pay the costs of the first appeal; the trial court failed to protect
his right of access to the court by not ordering Rebecca to appear at the
contempt hearing in order to return his legal documents; and the order denying
him access to the children is void because it is not in the best interest of
the children.  Mohammed raised, and we addressed, these issues in his
appeal.  Therefore, Mohammed has an adequate remedy by appeal.  

Accordingly, we deny Mohammed=s petition for a
writ of mandamus.

 

 

 

 

 

/s/     
J. Harvey Hudson

Justice

 

 

 

 

 

 

 

 

 

 

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 3, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.














[1]  Appellant raised this issue in his request for
findings of fact and conclusions of law on ultimate and controlling issues
filed on January 21, 2005.  However, this was not the appropriate method
for raising this issue.  





[2]  Evidence of a conviction is not admissible if
more than ten years has elapsed since the date of the conviction or of the
release of the witness from confinement, whichever is later, unless the court
determines, in the interests of justice, that the probative value of the
conviction substantially outweighs its prejudicial effect.  Tex. R. Evid. 609(b).  





[3]  As Mohammed recognizes, former section 107.002
applies here because the suit was filed in 2000.  Section 107.002 was
amended in 2003 to provide that a guardian ad litem is entitled to Aattend all legal proceedings in the case but may not
call or question a witness or otherwise provide legal services unless the
guardian ad litem is a licensed attorney who has been appointed in the dual
role; . . .@  Tex.
Fam. Code Ann. 107.002(c)(4) (Vernon Supp. 2006) (emphasis added).